**Certiorari Denied, February 3, 2010, No. 32,158**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-027**

**Filing Date:  December 18, 2009**

**Docket No. 28,356**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**JUAN OSCAR FUENTES,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth Martinez, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Cory J. Thompson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**CASTILLO, Judge.**

**{1}**    Juan Oscar Fuentes (Defendant) appeals from his conviction for aggravated battery with a deadly weapon causing great bodily harm in violation of NMSA 1978, Section 30-3-5 (1969).  Defendant raises two issues on appeal.  First, he asserts that there was insufficient evidence presented to support his conviction.  Second, Defendant challenges the testimony of the State's firearm forensic and tool mark expert and claims that the district court erred

1

in finding that the science underlying the expert's testimony was reliable based solely on the fact that this science is generally accepted. We affirm.

**BACKGROUND**

**{2}**    On November 21, 2007, at the conclusion of his jury trial, Defendant was convicted of aggravated battery with a deadly weapon causing great bodily harm in violation of Section 30-3-5. Defendant had already entered a plea of no contest to having violated NMSA 1978, Section 30-7-16(A) (2001), possession of a firearm by a felon. Defendant's conviction and plea stemmed from events occurring in Albuquerque, New Mexico on September 14, 2006, when Sean Levin (Victim) was shot in the stomach several times at close range while standing in front of his friend John Viesterveld's home. Victim sustained life threatening injuries and is now permanently disabled.

**{3}**    At Defendant's trial, the following evidence was presented. Detective Holly Garcia arrived at the scene of the shooting only a short time after Victim was shot. She observed Victim lying in Viesterveld's driveway bleeding from his pelvis area. After rendering assistance to Victim, Detective Garcia asked if Victim knew the identity of the shooter. Victim identified Defendant as the shooter.

**{4}**    Victim had been a guest at Viesterveld's house on the date of the shooting. Viesterveld was vacuuming the interior of his house and had asked Victim to stand on the front porch of his home during the cleaning. Although Viesterveld was primarily focused on vacuuming, he observed Defendant's vehicle pull up to his home. Viesterveld knew that Defendant and Victim were friends and thus did not divert his attention from cleaning. A few moments later, Viesterveld heard gun shots. Viesterveld ran to the front door and observed Defendant driving away and Victim lying in his driveway in a pool of his own blood. Viesterveld approached Victim, asked if he was okay, and immediately went back into his home to contact 911. During his conversation with the 911 operator, Viesterveld was asked if he knew who the shooter was. Viesterveld relayed this question to Victim who responded that Defendant had shot him.

**{5}**    Viesterveld's neighbor, Leif Goennsen, was home on the day of the shooting. After Goennsen heard the gun shots, he looked out of his door. He saw a blue car speed by. Goennsen was shown State's Exhibit 11 and 12, photographs of Defendant's vehicle, and he confirmed that the car in those photographs appeared to be the same car he saw speeding past his home immediately after he heard the gun shots.

**{6}**    A day after the shooting, Officer Scott Norris of the Albuquerque Police Department located Defendant. Officer Norris had been provided a description of Defendant and Defendant's vehicle at the beginning of his shift and, while on patrol in his police vehicle, happened to observe Defendant driving his car. Officer Norris performed a traffic stop and arrested Defendant.

**{7}**      Detective Brett Lampiris-Tremba, also of the Albuquerque Police Department, arrived at the scene of the traffic stop shortly after Officer Norris arrested Defendant. Detective Lampiris-Tremba had Defendant's car sealed until a search warrant could be obtained to enable a search of the vehicle for evidence related to the shooting. While awaiting issuance of that search warrant, Detective Lampiris-Tremba spoke with Defendant, who denied owning a firearm. After obtaining the search warrant, Detective Lampiris-Tremba searched Defendant's vehicle and discovered a handgun in a plastic bag underneath the driver's seat. The handgun was given to the forensic science unit of the Albuquerque Police Department.

**{8}**      Michael G. Haag, a forensic scientist with the Albuquerque Police Department, performed firearm forensics and tool mark analysis tests on the handgun, the projectiles, and the projectile casings recovered at the scene of the shooting to determine whether the gun found in Defendant's car was the weapon used in the shooting of Victim. Haag testified that, in his professional opinion, the gun found in Defendant's car was the gun used to shoot Victim to the exclusion of all other guns. Although his examination of the projectiles proved inconclusive, the projectile casings recovered from the scene of the crime matched the type of projectile casings required for the type of weapon found in Defendant's vehicle, and the markings he observed on test-fired projectile casings he produced by shooting the gun in his laboratory matched the markings he observed on the projectile casings recovered from the scene of the shooting.

**{9}**      At trial, Victim presented contradictory testimony. According to Victim, he and Defendant are close friends. They met in prison and both men share Carribean ancestry, a matter of some significance according to Victim. Victim testified that Defendant was not the shooter, contrary to his statements on the date of the incident. Instead, Victim described the shooter as an unidentified African-American male with short black hair in his late twenties or early thirties. Victim testified that he neither knows the man who shot him nor why this man shot him. While testifying, Victim described a letter that he had written to Defendant after the shooting but before Defendant's trial. In the letter, Victim stated that it was his intention to testify at Defendant's trial and explain that Defendant was not the shooter.

**{10}**      When asked about the conflict between what Victim told Detective Garcia immediately after he was shot and his trial testimony, Victim claimed that Detective Garcia misinterpreted his statement. Victim testified that he spoke Defendant's name when Detective Garcia asked who had shot him not because he wished to identify Defendant as the shooter but for the following reasons: (1) he was in shock and desired the company of his "most loyal, gracious[,] and best friend[]"; (2) he was concerned that Defendant had also been shot; (3) he wanted to see if Defendant was in the neighborhood; (4) he needed the presence of a fearless man and Defendant has the "uncanny" and "intuitive" ability to appear when he is needed.

**{11}**      In addition, Victim's account of the events leading up to the shooting differed

markedly from Viesterveld's. According to Victim, the following occurred. He and Viesterveld were both outside Viesterveld's home. A car appeared and the driver of the vehicle was pointing a pistol at them. Viesterveld immediately ran inside. Victim concluded that he needed to protect Viesterveld. Victim began walking towards the car. As he approached the vehicle and neared the end of Viesterveld's driveway, Victim was shot repeatedly.

## DISCUSSION

{12}    Defendant raises two issues on appeal. First, he claims that there was insufficient evidence to support his conviction for aggravated battery. As part of this argument, Defendant contends Victim's statement to Detective Garcia—the statement Victim made immediately after he was shot and during which he identified Defendant as the shooter—was hearsay and improperly admitted as substantive evidence. Second, Defendant contends that the State's firearm expert's testimony was improperly admitted. Citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993), Defendant asserts that the reliability of the science underlying Haag's testimony was not established. We begin with a review of the evidence.

### Sufficiency of the Evidence

{13}    "When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State; we resolve all conflicts and indulge all permissible inferences in favor of the verdict." *State v. Davis*, 2009-NMCA-067, ¶ 18, 146 N.M. 550, 212 P.3d 438 (internal quotation marks and citation omitted). "The relevant inquiry is whether substantial evidence exists of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each element of a crime charged." *Id.* (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). "On appeal, we will not reweigh the evidence nor substitute our judgment for that of the fact finder provided that there is sufficient evidence to support the verdict." *Davis*, 2009-NMCA-067, ¶ 18 (internal quotation marks and citation omitted).

{14}    At the close of Defendant's trial, the jury was instructed that in order to find Defendant guilty of aggravated battery with a deadly weapon causing great bodily harm, they were required to find that:

> 1.      [D]efendant touched or applied force to [Victim] by shooting [Victim] with a firearm;
> 2.      [D]efendant intended to injure [Victim];
> 3.      [D]efendant caused great bodily harm to [Victim] or acted in a way that would likely result in death or great bodily harm to [Victim];
> 4.      This happened in New Mexico on or about the 14th day of

4

September, 2006.

This instruction properly sets forth the essential elements of a violation of Section 30-3-5(C). *See* UJI 14-323 NMRA (Jury instructions, aggravated battery with great bodily harm); UJI 14-322 NMRA (Jury instructions, aggravated battery with a deadly weapon). Accordingly, we refer to this instruction as a guide in determining whether substantial evidence exists to support the jury's verdict with respect to each essential element of this offense. We rely on the detailed description of the evidence presented in the background section of this opinion.

**{15}** Substantial evidence was presented that Defendant shot Victim. Viesterveld, after hearing gun shots, went outside and saw Defendant fleeing and Victim on the ground severely injured. He testified that Victim informed him that Defendant was the shooter. Detective Garcia was similarly informed by Victim that Defendant shot him. Haag testified that the gun found in Defendant's vehicle was the same gun used in the shooting of Victim. Goennsen testified that a car identical to Defendant's sped away from the scene of the shooting.

**{16}** As to intent, the jury could infer that the shooting was intentional based on the fact that Defendant drove up to Viesterveld's house and that Defendant was shot multiple times at close range. The severity of Victims injuries supports the jury's conclusion that Defendant caused great bodily harm to Victim. There is no dispute that this incident occurred in New Mexico on or about September 14, 2006.

**{17}** The majority of Defendant's arguments regarding the sufficiency of evidence concern the weight Defendant believes should have been attributed to particular evidence and not whether substantial evidence exists to prove each essential element of the offense for which he was convicted. Defendant emphasizes the significance of those parts of the evidence supporting the theory that he *was not* the shooter. Conversely, Defendant de-emphasizes the evidence that supports the theory that he *was* the shooter. Finally, Defendant attacks the credibility of certain witnesses, those whose testimony supports the conclusion that Defendant shot Victim. Such arguments do little to demonstrate that the evidence submitted at trial was insufficient to convict Defendant of the offense charged. Rather, this form of argument merely highlights the all-important role of the jury: "[i]t is for the jury, and not for us, to determine the credibility of the witnesses and the weight to be given their testimony." *State v. Torres*, 78 N.M. 597, 598, 435 P.2d 216, 217 (Ct. App. 1967).

**{18}** At Defendant's trial, the jury was asked to consider conflicting accounts of the events surrounding the shooting of Victim. Based on the verdict, the jury plainly chose to credit Detective Garcia, Viesetveld, Goennsen, and Haag's testimony and the account that testimony supported, i.e., that Defendant was the shooter. We will not disturb that determination. *See State v. Vigil*, 87 N.M. 345, 350, 533 P.2d 578, 583 (1975) ("[The fact finder] can reject the defendant's version of the incident.").

**{19}** Defendant additionally challenges admission of Detective Garcia's testimony that

Victim told her—immediately after being shot—that Defendant shot him. Defendant asserts this evidence was erroneously admitted as substantive evidence. According to Defendant, Victim's statement to Detective Garcia was hearsay and admissible only as a prior inconsistent statement and not as substantive evidence, i.e., for the truth of the matter asserted. We disagree. The district court did not abuse its discretion in admitting Victim's statement as substantive evidence. *See State v. Salgado*, 1999-NMSC-008, ¶ 5, 126 N.M. 691, 974 P.2d 661 ("This Court reviews the trial court's determination of whether testimony is within exceptions to the hearsay rule for an abuse of discretion."). Victim's statement to Detective Garcia was clearly within the scope of the excited utterance exception to the hearsay rule. *See id.* ¶ 9 (concluding that a shooting victim's statement to an officer occurring immediately after the victim was shot and identifying the person who shot him was properly characterized and admitted by the district court as an excited utterance; the victim made the statement relating to the startling event of being shot while clearly under the stress of excitement caused by the shooting).

### *Alberico-Daubert* Analysis

**{20}** Defendant's second contention on appeal concerns the testimony of Haag, the State's firearm forensic and tool mark analysis expert. Citing *Daubert* and *Alberico*, Defendant asserts that the reliability of the science underlying Haag's testimony was not established and, thus, Haag's testimony was improperly admitted.

**{21}** The parties differ over which standard governs our review of Defendant's second contention. Defendant argues that we review this matter for an abuse of discretion, whereas the State argues that our review is de novo. In support of its contention that our review of the present matter is de novo, the State cites *State v. Torres*, 1999-NMSC-010, ¶ 28, 127 N.M. 20, 976 P.2d 20, and the following language from that case: "the initial determination of whether to apply the *Alberico-Daubert* standard entails a conclusion of law that is subject to de novo review." The parties do not dispute that the standard articulated in *Alberico-Daubert* is the standard for determining the admissibility of Haag's testimony. Rather, the parties dispute whether that standard was properly applied. Thus, there is no question regarding whether the *Alberico-Daubert* standard is applicable. The appropriate standard of review, therefore, is that which controls when the *Alberico-Daubert* standard is applicable.

**{22}** In *Alberico*, the New Mexico Supreme Court adopted the requirement set forth in *Daubert* that the proponent of expert opinion testimony must show that the expert's opinion has "'a reliable basis in the knowledge and experience of his discipline.'" *Alberico*, 116 N.M. at 167, 861 P.2d at 202 (quoting *Daubert*, 509 U.S. at 592). After adopting this standard, the New Mexico Supreme Court then clarified the "standard for reviewing the admission of expert opinion testimony at trial." *Alberico*, 116 N.M. at 169, 861 P.2d at 204. The Court stated that "[t]he rule in this State has consistently been that the admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *Id.* at 169,

861 P.2d at 205. Accordingly, we conclude that the abuse of discretion standard governs our review of Defendant's second contention. We now turn to the law governing the issue.

**{23}** The admission of expert testimony in New Mexico is governed by Rule 11-702 NMRA, which provides the following: "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." Existing precedent makes clear that there are "three prerequisites in Rule 11-702 for the admission of expert testimony: (1) experts must be qualified; (2) their testimony must assist the trier of fact; and (3) their testimony must be limited to the area of scientific, technical, or other specialized knowledge in which they are qualified." *Torres*, 1999-NMSC-010, ¶ 23; *accord Alberico*, 116 N.M. at 166, 861 P.2d at 202. Defendant's assertion that Haag's testimony was improperly admitted because the reliability of the science underlying Haag's testimony was not established implicates the third prerequisite. *See Alberico*, 116 N.M. at 166, 861 P.2d at 202 (explaining that the reliability requirement articulated in *Daubert* concerns the third of the Rule 11-702 requirements).

**{24}** Under the third prerequisite of Rule 11-702, the proponent of expert opinion testimony must show that the expert's opinion has "'a reliable basis in the knowledge and experience of his discipline.'" *Alberico*, 116 N.M. at 167, 861 P.2d at 202 (quoting *Daubert*, 509 U.S. at 592). Expert testimony involving scientific knowledge is not admissible "unless the party offering such testimony first establishes the evidentiary reliability of the scientific knowledge." *Torres*, 1999-NMSC-010, ¶ 24 (citing *Alberico*, 116 N.M. at 166-69, 861 P.2d at 202-05). In *Daubert*, the United States Supreme Court set forth a nonexclusive list of factors to assist courts in their assessment of whether expert testimony involving scientific knowledge has a reliable basis. *Daubert*, 509 U.S. at 593-94. This includes:

> (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known [or] potential rate of error in using a particular scientific technique and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or technique has been generally accepted in the particular scientific field.

*State v. Anderson*, 118 N.M. 284, 291, 881 P.2d 29, 36 (quoting *Daubert*, 509 U.S. at 593-94) (internal quotation marks omitted). This legal framework guides our review of Defendant's arguments.

**{25}** The district court ruled that the science underlying the firearm forensic and tool mark analysis techniques employed in this matter was reliable based solely on its finding that this type of science has generally been accepted. No evidence was submitted concerning the remaining factors set forth in *Daubert*, i.e., the testability of the science, whether the science has been subjected to peer review and publication, and whether there was a known rate of

7

error associated with using the science. In *Daubert*, the United States Supreme Court "rejected 'general acceptance' as the sole criterion for admissibility," *see* Paul C. Giannelli, et al., 2 Scientific Evidence § 1.08[b] (4th ed. 2007), and the New Mexico Supreme Court explained in *Alberico* that "a particular degree of acceptance of a scientific technique within the scientific community is neither a necessary nor a sufficient condition for admissibility." *Alberico*, 116 N.M. at 167, 861 P.2d at 203. Nevertheless, for the reasons explained below, we hold that the district court did not err.

**{26}** In *State v. Lente*, 2005-NMCA-111, ¶ 5, 138 N.M. 312, 119 P.3d 737, we adopted the following proposition which was established by the United States Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999): "[A] trial court retains discretionary authority needed both to avoid unnecessary reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." (internal quotation marks omitted). We are persuaded that, in the present matter, the district court appropriately exercised its discretionary authority in finding that the reliability of the science in question could properly be taken for granted. The science underlying the firearm forensics and tool mark analysis techniques employed in the present matter has long been held reliable in New Mexico. *See State v. Martinez*, 52 N.M. 343, 350, 198 P.2d 256, 260 (1948) (observing that modern science has established that "[t]he tracing of a bullet to the particular weapon from which it was discharged, by identifying the marks on the bullet with the physical features of the weapon" is almost, if not an exact science). Furthermore, as is made clear by the federal authority cited by Defendant, the reliability of this science is also widely recognized by the federal courts. *See United States v. Monteiro*, 407 F. Supp. 2d 351, 364 (D. Mass. 2006) ("For decades, both before and after the Supreme Court's seminal decisions in *Daubert* and *Kumho Tire* [*Co.*], admission . . . of firearm identification testimony . . . has been semi-automatic; indeed, no federal court has yet deemed it inadmissible.").

**{27}** We acknowledge that the federal district court in *Monteiro* commented that "[s]torm clouds . . . are gathering" over what appears to be a near universal assumption regarding the reliability of the science underlying firearm forensics and tool mark analyses. *See Monteiro*, 407 F. Supp. 2d at 364. However, Defendant failed to persuade us that the district court erred when it assumed the reliability of the science underlying the firearm forensics and tool mark analysis techniques employed by Haag in the present matter. In both his written and oral motions requesting a *Daubert* hearing, Defendant did not set forth any basis for calling into question the reliability of the science underlying those techniques. Instead, Defendant merely asserted that the science underlying those techniques was unreliable without any basis to support such a claim. As we explained above, such an unsubstantiated assertion is, in our view, insufficient to require a district court to hold a *Daubert* reliability hearing where, consistent with *Kumho Tire Co.* and *Lente*, the reliability of the science in question is properly taken for granted. *Kumho Tire Co.*, 526 U.S. at 152; *Lente*, 2005-NMCA-111, ¶ 5.

**{28}** Where the science underlying an expert's testimony may properly be taken for granted because the reliability of the science in question has long been accepted, a defendant must make an affirmative showing that there is some reason to doubt the reliability of that science before a district court is obligated to require a reliability hearing. No such showing was made in the present matter. Accordingly, we hold that the district court did not abuse its discretion in denying Defendant's request for a reliability hearing. The district court's decision was neither "a discretionary decision . . . premised on a misapprehension of the law," *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (internal quotation marks and citation omitted), nor "clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

**{29}** At the very end of his brief-in-chief, Defendant cites Rule 11-403 NMRA and asserts that "expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule [11-]403." The mere assertion of an evidentiary rule is not argument. Defendant has neither explained how Rule 11-403 applies in this matter nor developed a factual basis that would allow us to evaluate this claim. As such, we will not review this argument on appeal. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (observing that we do not review unclear or undeveloped arguments which require us to guess at what parties' arguments might be).

**CONCLUSION**

**{30}** For the foregoing reasons, we affirm.

**{31}** **IT IS SO ORDERED.**

 

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**ROBERT E. ROBLES, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for *State v. Fuentes*, No. 28,356**

| CL | CRIMINAL LAW |
|---|---|
| CL-AG | Aggravating or Mitigating Circumstances |
| CL-AS | Assault |

CL-DW                       Deadly Weapon

**EV**                      **EVIDENCE**
EV-EW                       Expert Witness
EV-HR                       Hearsay Evidence
EV-SC                       Scientific Evidence & Daubert Standard
EV-SS                       Substantial or Sufficient Evidence