# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-004**

**Filing Date: October 17, 2019**

**No. A-1-CA-36856**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JUAN M. GARCIA, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Released for Publication January 21, 2020.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Lindsey Law Firm, LLC
Daniel R. Lindsey
Clovis, NM

for Appellant

## OPINION

**DUFFY, Judge.**

**{1}**     Defendant appeals his conviction for speeding, contrary to NMSA 1978, Section 66-7-301 (2015), arguing that the State failed to present an adequate scientific foundation to establish the reliability of the radar technology used to determine his speed. We conclude that the district court did not abuse its discretion by admitting evidence of Defendant's speed because radar technology has generally been accepted as reliable and the State established a proper foundation for the accuracy of the particular radar unit used in this case. We therefore affirm.

## BACKGROUND

**{2}** Officer Michael Smith with the New Mexico State Police was on patrol in his police vehicle when he observed Defendant's vehicle traveling at "a great rate of speed." Officer Smith measured Defendant's speed twice using a radar device, and both readings showed that Defendant was traveling at seventy-eight miles per hour in a posted sixty-five mile-per-hour speed zone. Officer Smith stopped and cited Defendant for speeding. Following his trial and conviction in magistrate court, Defendant appealed to the district court for a bench trial de novo. During that trial, Defendant objected to Officer Smith's testimony about the radar device, arguing that "radar has not been determined to be reliable or valid in New Mexico" and that the State is required to present a scientific foundation to prove it as such. Defendant contended Officer Smith was not qualified as an expert and therefore could not lay the proper foundation for the radar evidence. The district court overruled Defendant's objection and admitted the radar speed evidence. Despite the opportunity, Defendant declined to cross-examine Officer Smith on his use of the radar device and did not present evidence of the device's unreliability. The district court found Defendant guilty of speeding. Defendant appeals.

## DISCUSSION

**{3}** We are asked to decide whether the district court erred in admitting radar evidence of the speed of Defendant's vehicle without expert testimony. *See generally State v. Torres*, 1999-NMSC-010, ¶ 26, 127 N.M. 20, 976 P.2d 20 (stating that "in New Mexico, evidentiary reliability is the hallmark for the admissibility of scientific knowledge"). Defendant argues that radar speed measurements are scientific evidence and that an expert is necessary to establish the reliability of radar technology before evidence of speed obtained by the use of a radar may be admitted at trial.[1] The State responds that expert testimony is unnecessary, given that radar technology is simple, commonly understood, and has long been recognized in many jurisdictions as reliable to accurately measure speed.

**{4}** "[T]he rule in this [s]tate has consistently been that the admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Fuentes*, 2010-NMCA-027, ¶ 22, 147 N.M. 761, 228 P.3d 1181 (internal quotation marks and citation omitted). When scientific evidence is presented at trial, New Mexico trial courts act as gatekeepers to ensure "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *State v. Alberico*, 1993-NMSC-047, ¶ 51, 116 N.M. 156, 861 P.2d 192 (adopting *Daubert* factors as a non-exclusive means to assess the validity

---

[1]Defendant argues on appeal that the device used to measure his speed was "unknown." However, both parties referred to the device as a radar to the district court, as did Officer Smith, and Officer Smith explained that he calibrated the radar using a tuning fork. *See, e.g., State v. Kramer*, 299 N.W.2d 882, 885 (Wis. 1981) (acknowledging that the use of tuning forks is a well-recognized method for determining the accuracy of the radar device). We therefore reject Defendant's argument that the record failed to identify the speed detection device used in this case.

and reliability of scientific testimony). New Mexico courts traditionally evaluate reliability by considering the factors set forth in *Daubert* and adopted in New Mexico by *Alberico*. *See Torres*, 1999-NMSC-010, ¶ 25. While the "*Alberico-Daubert* standard is not limited to novel scientific theories[,]" *id.* ¶ 29, we have affirmed district courts' discretionary authority to avoid unnecessary reliability proceedings in limited circumstances where the type of science has generally been accepted. *Fuentes*, 2010-NMCA-027, ¶¶ 25-26 (affirming the district court's ruling that "the science underlying the firearm forensic and tool mark analysis techniques . . . was reliable based solely on its finding that this type of science has generally been accepted").

**{5}**    In the case of radar technology, courts across the Unites States have for over six decades recognized "the general reliability of the radar speedmeter as a device for measuring the speed of a moving vehicle, [such] that it will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying it[.]" *People v. Magri*, 147 N.E.2d 728, 730 (N.Y. 1958); *see, e.g.*, *Everight v. City of Little Rock*, 326 S.W.2d 796, 797 (Ark. 1959) ("We are of the opinion that the usefulness of radar equipment for testing speed of vehicles has now become so well established that the testimony of an expert to prove the reliability of radar in this respect is not necessary."); *Robles v. State*, 705 N.E.2d 183, 186 (Ind. Ct. App. 1998) ("It is unnecessary for the [s]tate to present expert testimony to explain the proper operation, reliability or maintenance of the [radar] unit."); *State v. Dantonio*, 115 A.2d 35, 39-40 (N.J. 1955) (commenting that "[s]ince World War II members of the public have become generally aware of the widespread use of radar methods in detecting the presence of objects and their distance and speed; and while they may not fully understand their intricacies they do not question their general accuracy and effectiveness"); *see also* Thomas J. Goger, Annotation, *Proof, by Radar or Other Mechanical or Electronic Devices, of Violation of Speed Regulations*, 47 A.L.R.3d 822 § 2[a] (1973) (providing a compilation of reported cases relating to the admissibility and sufficiency of evidence obtained by speed radar devices and stating, "[a]lthough the early cases involving radar evidence required expert testimony as to the nature and function of a radar speedmeter and the scientific principles upon which it was based, it is now generally agreed that the reliability of radar is a proper subject for judicial notice" (footnote omitted)).

**{6}**    We have said that when the reliability of the science in question has long been accepted, the burden is on the defendant to make an "affirmative showing that there is some reason to doubt the reliability of that science before a district court is obligated to require a reliability hearing." *Fuentes*, 2010-NMCA-027, ¶ 28; *see State v. Montoya*, 2016-NMCA-079, ¶ 16, 382 P.3d 948 ("Given the abundance of appellate case law endorsing the reliability of breath alcohol testing generally, a trial court is justified in presuming such reliability in the absence of an articulated challenge."). Defendant does not dispute that radar technology has generally been accepted as reliable, nor does he argue that there is any reason to doubt its reliability here. Because Defendant articulated no challenge, and given the longstanding, widely recognized general acceptance and understanding of radar technology, we conclude that the district court did not abuse its discretion in finding that radar evidence was admissible without requiring expert testimony explaining the principles on which it is founded. *See Fuentes*,

2010-NMCA-027, ¶ 26 (holding that "the district court appropriately exercised its discretionary authority in finding that the reliability of the science in question could properly be taken for granted [because t]he science underlying the firearm forensics and tool mark analysis techniques . . . has long been held reliable in New Mexico").

{7}     Though radar is generally accepted as reliable, the State is still required to lay a proper foundation regarding the accuracy of the particular radar unit before evidence of its measurements may be admitted at trial. *See State v. Martinez*, 2007-NMSC-025, ¶ 9, 141 N.M. 713, 160 P.3d 894 (holding that the state, to satisfy the foundational requirements for the admission of a breath test, must make a "threshold showing that, at the time of the test, the machine was properly calibrated and that it was functioning properly"). The state may introduce testimony from the operating law enforcement officer to show that the radar unit was calibrated and functioning properly at the time it measured the speed of a defendant's vehicle. *See id.*; *see also Robles*, 705 N.E.2d at 186 ("Before the results of a radar test may be admitted into evidence, the [s]tate must prove that the equipment was properly operated and regularly tested."); *State v. Calvert*, 682 S.W.2d 474, 477 (Mo. 1984) (en banc) ("The proponent of radar evidence must prove the unit was operating accurately at the time of its use relative to the violation to sustain a speeding conviction."); *Cromer v. State*, 374 S.W.2d 884, 887 (Tex. Crim. App. 1964) (holding that the testimony of the patrolmen who were trained to operate and test the device was sufficient for the jury to find the appellant was speeding).

{8}     In this case, the State satisfied the foundational requirements through Officer Smith's testimony. Officer Smith testified that he had sixteen years of experience with the New Mexico State Police and that he was knowledgeable regarding the use and proper functioning of the radar equipment. He testified extensively about the radar system used to determine that Defendant was speeding, including the setup of the radar system, the dual antennas for sensing speed in front of and behind the police car, and how the system can be used in moving or stationary mode. Officer Smith described how he used a tuning fork to make sure the equipment was working properly and stated that he conducts tests before, during, and after every shift to ensure the "speed measuring device is operational as required by our department policies." Officer Smith further stated that on the day of the incident, when he observed Defendant's vehicle, he placed the radar device in moving mode and used the front antenna to determine that Defendant was driving at about seventy-eight miles per hour. After Defendant passed him, Officer Smith activated the rear antenna, also in moving mode, and confirmed Defendant was driving seventy-eight miles per hour. He also explained there were no other vehicles around at the time, and as such, he was able to ensure he was testing the correct vehicle. This testimony was sufficient to establish a proper foundation for the admission of the radar's speed measurement. For the reasons set forth above, we perceive no abuse of discretion by the district court in allowing the State's evidence of Defendant's speed.

**CONCLUSION**

{9}     For the foregoing reasons, we affirm Defendant's speeding conviction.

**{10}** IT IS SO ORDERED.

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**