This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-37646

**THOMAS WILLIAMS,**

Petitioner-Petitioner,

v.

**CITY OF SANTA FE,**

Respondent-Respondent,

**IN THE MATTER OF THE
TERMINATION OF THOMAS
WILLIAMS.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
David K. Thomson, District Judge**

Silva & Hughes, PC
R. Michael Hughes
Albuquerque, NM

for Petitioner

Robles, Rael, & Anaya, P.C.
Luis Robles
Albuquerque, NM

for Respondent

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}** This Court granted Thomas Williams's petition for writ of certiorari to review the City of Santa Fe's (the City) administrative decision terminating his employment as Information Technology (IT) Division Director for the City. Williams was dismissed for mismanaging the purchase, installation, and operation of a computer disaster recovery

system, the Hitachi SAN system (SAN system), designed to store and protect the City's electronic data. As the director of the City's IT division, Williams was responsible for purchasing, installing, and ensuring the expected performance of the SAN system. The system, purchased by the City at Williams's recommendation at a cost of approximately $600,000 was never made useable by the IT Division under Williams's management.

**{2}** The First Judicial District Court affirmed the City's decision terminating Williams. Williams filed a petition for writ of certiorari to this Court, which we granted. Williams claims in this Court that (1) the hearing officer's decision that the City had just cause to terminate his employment was not supported by substantial evidence in the record; (2) the City's personnel rules and policies required the City to provide him progressive discipline, instead of terminating his employment; and (3) the hearing officer improperly excluded evidence of disparate treatment of similarly situated individuals.

**{3}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural background, we discuss the pertinent facts within the context of Williams's arguments.

**DISCUSSION**

**I. Standard of Review**

**{4}** We apply the same administrative standard of review as did the district court, sitting in its appellate capacity. *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 15, 137 N.M. 161, 108 P.3d 1019. We will reverse an agency decision:

> (1) [If] the agency acted fraudulently, arbitrarily, or capriciously;
>
> (2) [If] based upon whole record review, the decision of the agency is not supported by substantial evidence;
>
> (3) [If] the action of the agency was outside of the scope of authority of the agency; or
>
> (4) [If] the action of the agency was otherwise not in accordance with law.

Rule 1-075(R)(1)-(4) NMRA.

**{5}** We review the factual findings of an administrative decision under a whole record standard of review. *Anaya v. N.M. State Pers. Bd.*, 1988-NMCA-077, ¶ 9, 107 N.M. 622, 762 P.2d 909. When we apply whole record review, we determine whether a challenged finding is supported by substantial evidence. *Id.* In making this determination, we view the evidence in the light most favorable to the administrative decision, giving deference to the fact-finder, "but [we] may not view favorable evidence with total disregard to

contravening evidence." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 6, 111 N.M. 550, 807 P.2d 734 (internal quotation marks and citation omitted). We must find that there is evidence, credible in light of the whole record, which is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency. *N.M. Att'y Gen. v. N.M. Pub. Regul. Comm'n*, 2013-NMSC-042, ¶ 29, 309 P.3d 89. "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record." *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806. Examples of arbitrary and capricious decisions are decisions which fail to consider an important aspect of the question or adopt an explanation that is counter to the evidence. *See id.* ¶ 12.

**{6}** We review de novo whether a ruling by an administrative agency is in accordance with the law. *Archuleta*, 2005-NMSC-006, ¶ 18. We will reverse a ruling of an agency which interprets the law unreasonably or unlawfully. *Id.*

## II. The Challenged Findings of Fact Are Supported by Substantial Evidence in the Record as a Whole and Are Not Arbitrary and Capricious

**{7}** Williams challenges the hearing officer's findings as "incorrect, arbitrary and capricious, and not supported by substantial evidence[.]" He also contends that the hearing officer improperly considered facts that did not form the original basis for termination. We reject both arguments, concluding that the hearing officer's decision is supported by substantial evidence and that the hearing officer's basis for termination does not differ from the City's original basis for termination.

### A. The Challenged Findings Are Supported By Substantial Evidence

**{8}** Williams challenges the hearing officer's findings with regard to four instances of mismanagement: (1) Williams did not prioritize installation of the SAN system; (2) Williams did not request additional staff or other resources with which to get the SAN system operational; (3) Williams did nothing to mitigate the delays associated with the police department renovation; and (4) Williams did not follow up with the SAN system vendors to ensure that the City would receive the equipment and training needed to achieve the SAN system's promised performance. We address each contention in turn.

### 1. Failure to Prioritize Installation of the SAN System

**{9}** The hearing officer found that "[a]t various but irregular times IT staff members worked on issues with the SAN [system] but at no time was the SAN project ever made a priority," and that "[t]he installation of the Hitachi SAN system was not, after its delivery, a high priority to Williams." Williams argues that he did prioritize the SAN system and that his ability to set priorities with an "understaffed, underfunded, and undertrained IT [d]epartment" led to "the successful implementation of hundreds of IT [p]rojects during his tenure as IT Division Director." According to Williams, the only evidence of his failure to prioritize the SAN system was the testimony of Duran, an IT

worker who did not report to Williams, and, according to Williams, has a reputation for dishonesty.

{10}     Contrary to Williams's argument, our review of the evidence shows that Duran's testimony was not the only evidence of Williams's failure to prioritize the SAN system. Human Resources Investigator Perez testified that, based on conversations with Williams's subordinates, "there were no priorities that were ever set. . . . No one took the lead on priorities, no one gave direction on priorities so it was just everybody was on their own." IT staff told Perez during the human resources investigation that had the SAN system been a priority, they would have found a way to get it done. When Perez asked Williams what priority he placed on installing the SAN system, he responded that everything is high priority and IT needed to find a way to get everything done: a statement that admits that there were no priorities. IT staff members Smith and Knockel both testified to the IT department's lack of prioritization and direction. Therefore, we conclude that there is substantial credible evidence in the record, apart from the testimony of Duran that supports the hearing officer's finding that Williams's failed to prioritize work on the SAN system. Because independent credible evidence in the record supports the hearing officer's finding that Williams failed to prioritize the SAN system, we need not address Williams's challenge to Duran's credibility.

## 2.     Failure to Seek Assistance With Installation

{11}     Williams also challenges the hearing officer's finding that "[a]t no time did Williams request additional staff or resources with which to get the SAN System operational." Williams argues that the record shows that he did request help installing the SAN system but that his "requests were ignored even when he specifically warned that if he was not given additional resources, projects, including data back-ups, would not get completed in a timely manner." In support of this contention, Williams cites a funding request he made for the network support division. That request for additional staff for the network support division was a general request, however, made nearly a year before the SAN system was purchased and delivered in December 2007. This request, therefore, does not support Williams's claim that he brought the need for additional staff to install and operate the SAN system to the City's attention. Moreover, Williams's own testimony directly conflicts with his claim that he sought additional staff and resources to install the SAN system. Williams testified that at the time that the SAN system was purchased, he believed that the IT division could find a way to get it implemented with the resources and staff available and that he would not have purchased the SAN system if he knew it would be too much work for the division.

{12}     We conclude that this evidence is sufficient to support the hearing officer's finding that Williams never brought the critical nature of the project, and his division's inability to install it without additional staff, to his superiors' attention.

## 3.     Failure to Mitigate Delays Associated With the Police Department Renovation

**{13}** Williams challenges the hearing officer's findings concerning his mishandling of the construction project at the City police department building, which delayed the planned installation of the second SAN unit. Williams argues that his not knowing about the construction plans prior to purchasing the SAN system is not mismanagement.

**{14}** Williams misstates the hearing officer's findings. The hearing officer does not find mismanagement based on Williams's failure to know about the construction project at the police department in advance. Indeed, the hearing officer found that Williams was aware of the remodel project before the delivery of the SAN system. The mismanagement identified by the hearing officer is Williams's failure, given his knowledge of the construction plans, to make arrangements to locate the equipment at another site, or, if that was not possible, to delay the delivery of the SAN system; or to make arrangements to promptly install the SAN system upon completion of the construction. The hearing officer found that the police department site became available in January 2009, and yet the SAN unit was not installed at that site by Williams's IT division until May 2013, four-and-a-half years later. Substantial evidence in the record supports these findings.

### 4. Failure to Follow Up With Vendors

**{15}** Williams challenges the hearing officer's finding that he failed to follow up with vendors about software issues, which prevented full installation of the SAN system. Williams cites testimony that he spoke to and interacted with the vendors on multiple occasions, claiming that this testimony contravenes the hearing officer's finding. The evidence that Williams interacted with the Hitachi vendors, however, is not sufficient to counter the hearing officer's finding that Williams never engaged meaningfully with the vendors to resolve the issues with the SAN system.

**{16}** Williams does not challenge the finding of the hearing officer that although "substantial inadequacies of the [SAN] system rendered it incapable of meeting the City's need for an adequate [d]isaster [r]ecovery [s]ystem," the vendors were ready, able and willing to address the software issues had Williams sought meaningful assistance. Nor does Williams challenge the hearing officer's finding that he did not consult with the City's legal counsel when he learned of the system's inadequacies; and failed to demand satisfaction or assistance from Hitachi.

**{17}** For all of these reasons, we conclude that the hearing officer's findings are supported by substantial evidence in the record as a whole.

### B. The Hearing Officer's Findings of Fact Were Consistent With the Findings of the City's Human Resources Investigation

**{18}** Williams's claim that the hearing officer's findings conflicted with the findings of the City's human resources department, on which his termination was based, lacks merit. Williams's argument is founded on the same misapprehension of the hearing officer's findings concerning his failure to mitigate the delays caused by the police

department remodel discussed in Subsection II (A)(3) above. We, therefore, do not address it further.

### III.     Williams Was Not Entitled to Progressive Discipline Prior to Termination

**{19}**     Williams argues that the City acted contrary to law by failing to follow its policy of progressive discipline when the City terminated his employment without first giving him an opportunity to correct or improve his performance. As noted above, we review de novo whether a ruling by an administrative agency is in accordance with the law. *Archuleta*, 2005-NMSC-006, ¶ 18.

**{20}**     Williams claims on appeal that the hearing officer erred as a matter of law in concluding that there was just cause to terminate Williams based solely on the hearing officer's findings of incompetency and seriously inadequate job performance. Williams argues that "serious misconduct" or "intentional wrongdoing" are the only bases on which an employer can terminate an employee without either first engaging in progressive discipline. We disagree.

**{21}**     This Court has held that "[j]ust cause to terminate exists when an employee engages in behavior inconsistent with the employee's position and can include, among other things, incompetency, misconduct, negligence, insubordination, or continuous unsatisfactory performance." *Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 15, 139 N.M. 122, 129 P.3d 158 (internal quotation marks and citation omitted). Serious problems with job performance, particularly when the employee is a supervisor with important responsibilities, may constitute just cause to dismiss, without engaging first in progressive discipline. *Id.* Although most New Mexico cases on progressive discipline and just cause for dismissal involve discipline due to intentional misconduct or wrongdoing in the workplace, neither this Court nor our Supreme Court has limited just cause for termination to intentional misconduct. Our Supreme Court's decision in *Archuleta*, 2005-NMSC-006, for example, arises in the context of incompetent or negligent performance by a police officer in a supervisory position. There were no allegations in *Archuleta* of intentional misbehavior or willful misconduct by the officer. Evidence that the officer exercised poor judgment by failing to report a serious incident, conduct which had serious consequences, was held sufficient to provide just cause either to demote or terminate the officer, in the city's discretion, for incompetence in performing his job duties. *Archuleta*, 2005-NMSC-006, ¶¶ 25-29. Importantly, our Supreme Court held that "[a]dministrative agencies have considerable latitude to shape their penalties[,]" and noted that "[t]he relationship of penalty to policy is peculiarly one for the administrative agency and its special competence[.]" *Id.* ¶ 28. In reviewing the record, the Court emphasized the importance of the fact that the officer who failed to competently perform his duties was "the sole commanding lieutenant in charge of an entire division of the [Santa Fe Police Department] graveyard shift," a highly responsible position. *Id.* ¶ 24. The Court noted as well that it was appropriate for the city to take into account the liability the city might incur if it retained the employee. *Id.* ¶ 27.

**{22}** In this case, the City's Personnel Rules/Regulations and Policies adopt a comparable just cause standard, providing that "[p]ermanent employees may be dismissed, demoted, or suspended only for just cause," which includes but is not limited to, "[c]areless, negligent, or improper use of City property, equipment, or funds" or "[i]nefficiency, incompetence or negligence in the performance of assigned job duties or failure to perform job requirements or performance which continues to be unsatisfactory." The hearing officer cited the following circumstances in support of his conclusion that there was just cause for dismissal without progressive discipline: Williams's actions and inactions with regard to the SAN system and his failure to make that system operational "constitute incompetence, negligence and carelessness by [Williams] which directly produced a loss in excess of $600,000[] to the City of Santa Fe[,]" as well as a waste of "countless human labor hours[.]" Williams's negligence and incompetence when the SAN system was ordered and delivered was compounded by additional negligence a year later when Williams failed to get the project back on track after the completion of the police department construction. The hearing officer concluded that Williams manifested "a level of incompetence which reasonably calls into question whether [Williams] was capable of performing his duties as IT supervisor," and that the waste of resources was of such magnitude "as to justify immediate termination so as to prevent even more and greater losses at [Williams]'s hands."

**{23}** These conclusions, which are fully supported by the evidence, are sufficient to constitute just cause for termination. The hearing officer in this case properly considered the factors identified by our Supreme Court in *Archuleta*, relying on the high level of responsibility needed in a department supervisor, Williams's demonstrated inability to perform the essential duties of his job, the severity of the consequences in terms of wasted money and wasted human resources, the repetition over time of similar instances of lack of judgment and incompetence by Williams, and the possibility of further losses to the City due to Williams's incompetence if he was not dismissed. We find no error.

## IV. Williams Was Not Precluded From Submitting Evidence Concerning the Discipline of Similarly Situated City Employees

**{24}** Williams argues that he was denied due process of law because he was not allowed to solicit testimony or offer evidence of disparate treatment of similarly situated individuals, and because the process by which the human resources department independently reviewed Williams's termination was compromised. Williams does not describe the facts relevant to his claim of denial of due process based on lack of independent review, nor does he cite relevant legal authority. We therefore consider only Williams's claim that the hearing officer improperly excluded evidence of disparate treatment of similarly situated individuals. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that this Court does "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be").

**{25}** Evidence that similarly situated individuals were treated differently and less severely is admissible to show bias or unequal or disparate treatment in imposing discipline. *See Archuleta*, 2005-NMSC-006, ¶ 24. Such evidence, however, only has probative value if the employees are similarly situated as to position or rank and if the reasons for discipline and the surrounding circumstances are analogous to the reasons for discipline and the circumstances in the case being heard. *See id.* Where the employees at issue do not hold similar positions, or the reasons for or circumstances surrounding the discipline are different, the evidence is inadmissible. *See id.*

**{26}** Williams claims on appeal that that he was not allowed to solicit testimony about the disparate treatment of similarly situated individuals. Williams's brief, however, mentions only one witness whose testimony was allegedly improperly excluded: Lisa Martinez. Williams attempted to question Ms. Martinez about her alleged failure to agree to a contract that his attorney claimed might have saved the City money, arguing that this conduct was the same type of conduct that supported the discipline of Williams but that Ms. Martinez was not disciplined.

**{27}** We conclude that the hearing officer correctly applied the standards of law concerning similarly situated individuals in excluding this testimony: (1) Williams laid no foundation for his claim that Martinez missed an opportunity to save money, simply asserting it through the argument of his counsel; and (2) even if Ms. Martinez failed to take advantage of the opportunity to enter into a purchase contract that would have saved the City money, the conduct alleged was not similar to the repeated lack of judgment and incompetence in supervising the SAN project.

**{28}** Although Williams asserts in his brief that he was prevented from putting on evidence of waste of taxpayer dollars by other City employees whom he alleges were similarly situated to him, he fails to cite any example in the record where he attempted to call a witness or requested the admission of evidence, except his questioning of Ms. Martinez. We, therefore, assume that Ms. Martinez's questioning was the sole attempt by Williams to introduce evidence of disparate treatment. *Gomez v. Chavarria*, 2009-NMCA-035, ¶ 13, 146 N.M. 46, 206 P.3d 157 ("Where a party fails to cite any portion of the record to support its factual allegations, an appellate court need not consider its argument on appeal."). We therefore reject his claim that he was improperly prevented by the hearing officer from introducing probative evidence of disparate treatment.

**CONCLUSION**

**{29}** For the reasons stated, we affirm the decision of the hearing officer dismissing Williams from his employment with the City of Santa Fe.

**{30} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**