This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36648**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RAMON LORENZO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}**     This Court issued an opinion on February 8, 2022, which is hereby withdrawn and replaced with this opinion, following the grant of Defendant Ramon Lorenzo's motion for rehearing.

**{2}**     Defendant appeals his convictions for the substantive offenses of armed robbery (NMSA 1978, § 30-16-2 (1973)), aggravated burglary (NMSA 1978, § 30-16-4 (1963)), aggravated battery (NMSA 1978, § 30-3-5 (1969)); three conspiracy charges related to those substantive crimes (NMSA 1978, § 30-28-2 (1979)); and felony failure to appear

(NMSA 1978, § 31-3-9 (1999)). Defendant raises numerous issues on appeal: (1) the district court erred in denying his motion to sever his failure to appear charge from his other charges as improperly joined; (2) trial counsel was ineffective due to a conflict of interest; (3) his right to a speedy trial was violated; (4) insufficient evidence supports his conviction for failure to appear; (5) he was denied his right to a fair trial due to implied juror bias; (6) the district court erred in prohibiting him from cross-examining a witness about her drug use; and (7) on rehearing, his multiple conspiracy convictions violate his right to be free from double jeopardy and his conspiracy to commit aggravated battery conviction is not supported by sufficient evidence. We conclude that Defendant's multiple conspiracy convictions violate the prohibition against double jeopardy, and we accordingly remand to the district court to vacate two of those convictions. Otherwise, we affirm.

## BACKGROUND

**{3}** Because this is an unpublished, memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, we only briefly set out the procedural background of this case and reserve discussion of pertinent facts for our analysis.

**{4}** Defendant's convictions stem from a robbery and shooting at a restaurant in Milan, New Mexico. Defendant's case initially was joined with that of his codefendant, Leo Galindo. On the first day of Defendant's and Galindo's scheduled trial (October 5, 2015), Defendant did not appear. Defendant had previously been incarcerated pretrial; but, at that time, he was on conditions of release. At the October 5, 2015, trial setting, Defendant's trial counsel, Gary Fernandez, explained to the district court that he had not been in touch with Defendant for approximately three days and that Defendant was supposed to meet with counsel over the weekend but did not show up. The district court issued a bench warrant for Defendant and proceeded with Galindo's trial. Defendant was subsequently indicted in a separate case for felony failure to appear based on his nonappearance on October 5, 2015. Approximately one-and-one-half months after his original trial date, Defendant was apprehended. The State joined Defendant's failure to appear case with his robbery case. Prior to trial, Defendant moved the district court to sever the cases, but the district court denied the motion and all charges were tried together.

**{5}** At Defendant's trial, the State's key witness, Stephanie Baca, testified under a grant of immunity. Baca testified as to Defendant's involvement in the robbery and his admission to shooting the restaurant's owner. Regarding the failure to appear charge, the State introduced into evidence, over Fernandez's objection, a transcript of the colloquy that happened between Fernandez and the district court on the morning of Defendant's original trial date. The jury found Defendant guilty of the above-enumerated charges, but acquitted him of tampering with evidence and conspiracy to commit tampering with evidence. This appeal followed.

## DISCUSSION

**{6}** Before addressing the merits of Defendant's arguments, we pause to express concern with the briefing submitted on Defendant's behalf. As we discuss at various points in this opinion, a number of Defendant's arguments are undeveloped, lack citation to relevant authority, and are otherwise deficient. What our Supreme Court stated nearly thirty years ago in *State v. Clifford*, 1994-NMSC-048, 117 N.M. 508, 873 P.2d 254, bears repeating:

> We remind counsel that we are not required to do their research, and that this Court will not review issues raised in appellate briefs that are unsupported by cited authority. When a criminal conviction is being challenged, counsel should properly present this [C]ourt with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure.

*Id.* ¶ 19 (citations omitted); *see also State v. Garcia*, 2019-NMCA-056, ¶ 51, 450 P.3d 418 (providing that this Court would not develop an argument on the party's behalf). It is "the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred." *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261. Not only does this Court not have the resources to do appellate counsel's work for them, but that is not our role and doing so would create a substantial risk of error. *See, e.g.*, *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (citation omitted)). We admonish appellate counsel for Defendant to follow our rules of appellate procedure. We now address each of Defendant's claims of error in turn.

## I. Misjoinder

**{7}** Defendant first argues that the district court erred in denying his motion to sever the failure to appear charge from the robbery charges as improperly joined. As we explain, Defendant does not persuade us that the district court erred.

## A. Law on Joinder and Severance

**{8}** Rule 5-203 NMRA governs joinder and severance of offenses. Rule 5-203(A) (joinder of offenses) provides:

> Two or more offenses shall be joined in one complaint, indictment or information with each offense stated in a separate count, if the offenses, whether felonies or misdemeanors or both:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan.

Whenever the test set out in Rule 5-203(A) is satisfied, the state must join the offenses. *See State v. Gallegos*, 2007-NMSC-007, ¶ 14, 141 N.M. 185, 152 P.3d 828.

**{9}**     If offenses are properly joined under Rule 5-203(A), a defendant may move, pursuant to Rule 5-203(C), to have the charges severed for separate trials. *See Gallegos*, 2007-NMSC-007, ¶ 16; *see also* Rule 5-203(C) ("If it appears that a [party] is prejudiced by a joinder of offenses . . . , the court may order separate trials of offenses[.]"). A district court must sever properly joined offenses "if there is an appreciable risk that reversal will be warranted because of a later determination of *actual* prejudice." *Gallegos*, 2007-NMSC-007, ¶ 19. On appeal, we review a district court's decision not to sever properly joined charges for abuse of discretion. *See id.* ¶ 18. In making this determination, we consider whether evidence pertaining to the offenses would be cross-admissible. *See id.* ¶ 20. If the district court abused its discretion in denying a severance of properly joined offenses, we next consider nine factors to determine whether the defendant suffered actual prejudice from having the offenses tried together, thereby warranting a new trial. *See id.* ¶¶ 20, 41, 46.

**{10}**     In addition, "[a] trial judge is not precluded from severing charges that have been *improperly* joined under Rule 5-203(A)." *State v. Paiz*, 2011-NMSC-008, ¶ 18, 149 N.M. 412, 249 P.3d 1235 (emphasis added). To determine whether a district court erred in denying a Rule 5-203(A) claim, a "defendant only has to show that the offenses joined . . . do not meet the criteria for joinder under Rule 5-203(A)." *Paiz*, 2011-NMSC-008, ¶ 2. "[A]n improper joinder of offenses claim is a question of law, which we review de novo." *Id.* ¶ 10. Even if the district court erred in failing to sever improperly joined offenses, however, the defendant on appeal must still show that he suffered actual prejudice before reversal is warranted. *See id.* ¶ 19. To determine whether the defendant satisfied this burden, we examine the same nine factors considered for properly joined offenses. *See id.* ¶ 20.

**B.     Defendant Fails to Establish the Offenses Were Improperly Joined**

**{11}**     In this case, Defendant below appeared to rely on both Rule 5-203(A) and Rule 5-203(C) as alternative grounds for severance. On appeal, however, Defendant abandons any Rule 5-203(C) claim, contending only that our review is de novo and asserting only that "[t]he State should not have been allowed to join the [failure to appear] with the other offenses as they do not meet [the] burdens imposed by Rule 5-203(A)." Defendant does not separately argue that, assuming proper joinder, the district court abused its discretion in denying his severance motion.

**{12}** In his briefing, Defendant analyzes the nine *Gallegos* factors relevant to prejudice but glosses over the critical initial question. That is, Defendant fails to address whether the district court even erred in concluding the offenses were properly joined under the Rule 5-203(A) criteria. *See Paiz*, 2011-NMSC-008, ¶¶ 2, 10. On this point, Defendant baldly asserts, without any supporting authority, that "[t]here exists no plausible argument that [Defendant's] failure to appear at trial is in any way connected to an alleged robbery two years prior." Defendant utterly fails to analyze this issue and we will not develop such an argument for him. *See, e.g.*, *Clifford*, 1994-NMSC-048, ¶ 19; *Garcia*, 2019-NMCA-056, ¶ 51. Whether, and when, joinder of a failure to appear charge with the underlying charges on which the defendant failed to appear is proper appears to be an issue of first impression in New Mexico. What is more, looking out of state, it does not appear the issue is as straightforward as Defendant would have us believe. *Compare, e.g.*, *Grant v. United States*, 402 A.2d 405, 407 (D.C. 1979) ("[A]t least three United States Circuit Courts of Appeal, applying the . . . federal rule, have held that a particular bail jumping charge was 'connected' to, and thus joinable with an underlying substantive offense." (citing cases)), *with, e.g.*, *Guthrie v. State*, 222 P.3d 890, 894 (Alaska Ct. App. 2010) (discussing jurisdictions holding "that joinder is improper when the only 'connection' between the failure to appear charge and the initial charges is that the failure to appear charge is based on the defendant's failure to attend a court proceeding involving the initial charges").[1] "It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." *Elane Photography*, 2013-NMSC-040, ¶ 70. Because Defendant fails to make any developed argument on this point, we decline to resolve this issue today. *See id.*

**{13}** Because Defendant does not persuade us that the district court erred in denying his motion to sever the charges as improperly joined, we hold no error occurred. *See, e.g.*, *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (recognizing the existence of a presumption of correctness in the district court's rulings and the appellant's burden of establishing error).

## II. Ineffective Assistance of Counsel

**{14}** Defendant next seeks reversal on the ground that trial counsel was ineffective. In particular, Defendant contends that the admission of the transcript containing trial counsel Fernandez's statements on October 5, 2015, to the district court about counsel's lack of contact with Defendant in the days leading up to the original trial setting "violated [his] right to conflict-free representation under the Sixth Amendment."[2]

---

1We cite these out-of-state authorities for illustrative purposes only.

2Defendant touches on an array of other, potential errors in this section of his brief in chief, including that the admission of the transcript was hearsay and gave rise to a Confrontation Clause violation and that trial counsel should have withdrawn from representing Defendant and the district court should have permitted counsel's mid-trial withdrawal. To the extent Defendant is asserting these claims as independent grounds for reversal, they lack development and support, and, as a result, we do not consider them. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's]

We find Defendant's conflict-based ineffective assistance of counsel claim to be lacking in both record and legal support, and we accordingly conclude that he has failed to make out such a claim on direct appeal.

## A.     Law on Ineffective Assistance of Counsel

**{15}**     We observe that "[h]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (internal quotation marks and citation omitted). Nevertheless, we review claims of ineffective assistance of counsel de novo. *See State v. Montoya*, 2015-NMSC-010, ¶ 57, 345 P.3d 1056.

**{16}**     Ineffective assistance of counsel claims may involve a contention, like Defendant's here, that counsel suffered from a conflict of interest. *See State v. Martinez*, 2001-NMCA-059, ¶ 24, 130 N.M. 744, 31 P.3d 1018; *see also State v. Salazar*, 2019-NMCA-021, ¶ 29, 458 P.3d 546 ("We have long recognized the Sixth Amendment guarantees a defendant the right to counsel of undivided loyalty, free from conflicts of interest."). Typically, to prevail on an ineffective assistance of counsel claim, a criminal defendant must show that trial counsel's performance was deficient and, as a result of this deficiency, the defendant was prejudiced—meaning "there was a reasonable probability that the result of the trial would have been different." *State v. Dylan J.*, 2009-NMCA-027, ¶ 38, 145 N.M. 719, 204 P.3d 44 (omission, internal quotation marks, and citation omitted). But, for conflict-based ineffective claims, like Defendant's, prejudice is presumed if a defendant demonstrates that an actual conflict of interest undermined counsel's loyalty. *See Martinez*, 2001-NMCA-059, ¶ 24. But to invoke this presumption, the record must establish that "an actual, active conflict adversely affect[ed] counsel's trial performance; the mere possibility of a conflict is insufficient." *Id.*; *see also State v. Hernandez*, 1983-NMSC-101, ¶ 7, 100 N.M. 501, 672 P.2d 1132 ("'[T]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.'" (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980))).

**{17}**     Our courts have found actual conflicts of interest under several circumstances. They most often occur "when counsel represents two clients with divergent interests in the same matter" but are not limited to such circumstances. *State v. Joanna V.*, 2004-NMSC-024, ¶ 6, 136 N.M. 40, 94 P.3d 783. For instance, a conflict may arise where a lawyer is implicated in the same criminal enterprise as the defendant because the "lawyer's need for self-preservation will trump the duties of representation owed to the client." *Martinez*, 2001-NMCA-059, ¶ 25. A conflict also may arise where counsel would have pursued "some plausible defense" strategy but avoided it because it would have been "damaging to another's interest." *State v. Santillanes*, 1990-NMCA-035, ¶ 7, 109

---

arguments might be"); *see also State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue[.]").

N.M. 781, 790 P.2d 1062. While the circumstances vary, our case law has made one thing plain—the record must establish an actual conflict of interest, not the mere possibility of one. *See State ex rel. Child., Youth & Fams. Dep't v. Tammy S.*, 1999-NMCA-009, ¶ 21, 126 N.M. 664, 974 P.2d 158.

## B. Defendant Does Not Make Out a Conflict-Based Ineffective Assistance of Counsel Claim on Direct Appeal

**{18}** In this case, Defendant baldly asserts that trial counsel effectively testified against Defendant and this placed counsel "in the impossible position of cross-examining his own statements[,]" "result[ing] in a conflict of interest." While we do not disagree about the obvious impropriety of an attorney testifying against his client, *see* Rule 16-307 NMRA, Defendant does not explain how the situation in this case—where Defendant's attorney was not actually called to testify as a witness—is equivalent, *see Fuentes*, 2010-NMCA-027, ¶ 29, and, more critically, how it gave rise to trial counsel "*actively* represent[ing] conflicting interests" that adversely affected his trial performance, *Hernandez*, 1983-NMSC-101, ¶ 7 (internal quotation marks and citation omitted). Defendant does not, for instance, explain how Fernandez's and Defendant's interests diverged. *See Joanna V.*, 2004-NMSC-024, ¶ 6. Nor does Defendant contend that Fernandez's need for self-preservation trumped his duties to Defendant, *see Martinez*, 2001-NMCA-059, ¶ 25, or that Fernandez avoided a plausible defense due to a conflict, *see Santillanes*, 1990-NMCA-035, ¶ 7. In short, Defendant appears to have "merely assumed the presence of a conflict and its consequences without demonstrating either on the record." *Joanna V.*, 2004-NMSC-024, ¶ 8. We are thus left to speculate about how exactly Defendant's and Fernandez's interests diverged and how exactly Fernandez's performance was adversely affected. *See id.* ("Any number of hypothetical possibilities arise, but without a record we are left with mere conjecture."). This is insufficient to make out a conflict-based ineffective assistance claim. *See id.*; *State v. Sosa*, 1997-NMSC-032, ¶ 22, 123 N.M. 564, 943 P.2d 1017 ("We conclude that the alleged conflict at issue in the instant case is not sufficient to establish an actual conflict of interest."), *abrogated on other grounds by State v. Porter*, 2020-NMSC-020, ¶ 7, 476 P.3d 1201; *Santillanes*, 1990-NMCA-035, ¶¶ 7, 12 (providing that the adverse effects of counsel representing conflicting interests must be supported by evidence in the record).

**{19}** Nor does the authority cited by Defendant support his contention that an actual conflict adversely affecting counsel's trial performance arose here. Other than citing case law for general principles, Defendant relies only on *Martinez*, a case in which this Court concluded that the defendant had made out a conflict-based ineffective assistance of counsel claim on direct appeal.[3] *See* 2001-NMCA-059, ¶ 37. *Martinez*

---

[3]Defendant additionally contends Fernandez's disclosures at the original trial setting violated Rule 16-108(B) NMRA, which provides that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these rules." *But see Salazar*, 2019-NMCA-021, ¶ 31 (providing that courts "have recognized the lawyer's duties to the client are often, and properly, circumscribed by the lawyer's duties to the court and the administration of justice"). Defendant then goes on to state that, once "it became obvious that the State intended to use trial counsel's statements against [Defendant], trial counsel was obligated to

involved an "appalling record" where trial counsel was implicated in the murder for which his client was on trial and counsel expended trial time attempting to explain away his potential involvement and failed to call a defense witness (an employee of counsel). *See id.* ¶¶ 10, 12, 17-18, 30-37. Under these circumstances, the actual conflict was obvious from the trial record—counsel's need to exculpate himself from the crime clearly trumped counsel's duties to his counsel. *See id.* ¶¶ 25, 37.

**{20}** Although the facts in this case are plainly nothing like *Martinez*, Defendant draws on one portion of *Martinez* in support of his argument. At one point in *Martinez*, the Court explained how an actual conflict of interest still arose in that case, even if defense counsel was not present at the scene of the crime, as counsel contended. *Id.* ¶ 30. The Court explained that, even under that alternative, "the appearance of involvement and impropriety put [counsel] in such a position that he had to consider testifying, at the very least, to clear a cloud of suspicion from the trial. Of course, taking the stand would have precluded defense counsel from continuing as an advocate in the case." *Id.* (citing Rule 16-307). The Court continued that, under that alternative, a conflict would still exist but "counsel could forego testifying and represent his client only if accompanied by his client's waiver of the conflict." *Id.* From this, Defendant appears to reason that *Martinez* stands for the proposition that the conflict there arose from the possibility of counsel testifying. Defendant, however, misconstrues *Martinez*. Reviewing *Martinez* in whole, it is apparent that the conflict identified by the Court in that case was counsel's potential involvement in the crime for which his client stood trial and the resulting divergence of counsel's and the defendant's interests. *See id.* ¶¶ 26-30, 37. As we understand it, the point of the above-quoted excerpts from *Martinez* was that—even if counsel was in fact not at the scene of the crime—the implication of his involvement in the crime was so great that the conflict remained. *See id.* ¶ 30. But, even if *Martinez* could be read in the fashion Defendant suggests, the Court went on to examine whether defense counsel's performance was in fact adversely affected as a result of the conflict. *See id.* ¶¶ 31-36. The record in that case showed that it was. *See id.* In other words, it was not enough for the defendant simply to identify a potential conflict and a potential, resulting effect. The record itself had to establish that the actual conflict in fact adversely affected counsel's performance, which, as already discussed, Defendant has failed to do in this case.

**{21}** Lastly, to the extent Defendant claims that the introduction of a criminal defendant's attorney's statements at trial will always give rise to a violation of the constitutional right to effective counsel, we are not persuaded. As explained, *Martinez* does not support such a contention. Nor have we found any other case law in New Mexico on point. What is more, out-of-state authority reveals no per se rule. *Compare, e.g.*, *State v. Wereman*, 902 P.2d 1009, 1011-12 (Mont. 1995) (concluding that the admission of counsel's remarks in a minute entry, which the defendant contended "effectively transformed his counsel into the [s]tate's key witness[,]" "did not adversely

---

withdraw"—apparently referring to Rule 16-307. Defendant, however, does not develop an argument as to why counsel's failure to withdraw (or the district court's denial of counsel's mid-trial withdrawal) amounted to ineffective assistance of counsel or other reversible error. *See Fuentes*, 2010-NMCA-027, ¶ 29. And we will not develop such an argument for him. *See, e.g.*, *Clifford*, 1994-NMSC-048, ¶ 19; *Garcia*, 2019-NMCA-056, ¶ 51.

affect counsel's ability to defend [the defendant]" and therefore did not establish a conflict-based ineffective assistance of counsel claim), *with, e.g., Uptain v. United States*, 692 F.2d 8, 9-10 (5th Cir. 1982) (concluding, under incompetence branch of ineffective assistance of counsel, where counsel was the government's sole witness and counsel's "primary argument to the jury should have been to diminish the weight, if not the credibility, of his own testimony[,]" that counsel's performance was "seriously inadequate" and it "prejudiced the fairness" of the defendant's trial).[4]

**{22}**     Although the facts we are able to discern from the record are troubling and raise the possibility that trial counsel had an actual conflict of interest, we are unable to determine—based on the limited record on direct appeal and Defendant's argument on appeal, which lacks citation to persuasive authority and lacks a considered explanation as to how counsel's and Defendant's interests diverged in such a way that affected counsel's performance—whether Defendant's claim has merit. *See Vigil-Giron*, 2014-NMCA-069, ¶ 60; *Fuentes*, 2010-NMCA-027, ¶ 29. We emphasize that Defendant's claim may be better suited for habeas or other post-conviction review, where a record about the potential conflict alleged in this case can be developed. This decision does not foreclose Defendant from bringing an ineffective assistance of counsel claim in such a proceeding. *See Arrendondo*, 2012-NMSC-013, ¶ 44.

## III.    Speedy Trial

**{23}**     Defendant next contends that the district court erred in denying his motion to dismiss based on a violation of his right to a speedy trial. In determining whether a defendant has been deprived of the right to a speedy trial, we consider the four factors set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "The heart of the right to a speedy trial is preventing prejudice to the accused." *Id.* ¶ 4 (alteration, internal quotation marks, and citation omitted). In reviewing a speedy trial claim, "we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272 (alterations, internal quotation marks, and citation omitted).

**{24}**     As for the first *Barker* factor, so long as the presumptively prejudicial period of delay has passed (twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case), further inquiry into the *Barker* factors is warranted. *See State v. Garza*, 2009-NMSC-038, ¶¶ 21, 48, 146 N.M. 499, 212 P.3d 387. In this case, regardless of the complexity of the case, the threshold period of delay has been met, warranting additional consideration of the *Barker* factors. *See id.* We,

---

[4]We again cite these out-of-state authorities not to draw on them in support or against any particular disposition of Defendant's ineffective assistance of counsel claim in this case, but instead only to illustrate that courts do not uniformly hold that situations similar to those in this case give rise to an actual conflict of interest.

however, do not find it necessary to fully analyze each factor to resolve Defendant's speedy trial claim. As this Court recently explained, "[i]n a speedy trial analysis, if any one of the [first] three *Barker* factors does not weigh heavily in favor of a defendant, . . . [the d]efendant must show particularized prejudice in order to prove their [right to] speedy trial was violated." *State v. Wood*, 2022-NMCA-009, ¶ 21, 504 P.3d 579 (proceeding to analyze prejudice factor after determining that the second factor did not weigh heavily in the defendant's favor and providing, parenthetically, that "a defendant's failure to show particularized prejudice may preclude review of the *Barker* factors"). Defendant here does not contend that the first three *Barker* factors weigh heavily in his favor. Nor could he, based on our review of the record and relevant law. In light of this, Defendant must make a showing of particularized prejudice to prevail on his speedy trial claim. *See id.*

**{25}** "We analyze prejudice to a defendant in a speedy trial case in light of three defense interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Smith*, 2016-NMSC-007, ¶ 60, 367 P.3d 420 (internal quotation marks and citation omitted). "As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citations omitted). "Defendant bears the burden of demonstrating and substantiating prejudice." *State v. Parrish*, 2011-NMCA-033, ¶ 32, 149 N.M. 506, 252 P.3d 730.

**{26}** In this case, Defendant did not testify at the hearing on his speedy trial motion, nor did he present any other evidence at that hearing. Now on appeal, Defendant relies on the bare fact that he was incarcerated for a period of time pretrial and the mere passage of time to support his claims of prejudice. As we explain, this is insufficient.

**{27}** First, as for oppressive pretrial incarceration, Defendant does little more than point to his seventeen-month period of detention prior to the original trial date. While some prejudice from continuous pretrial incarceration is obvious, without affirmative proof, we can only speculate as to whether it was oppressive or undue. *See State v. Ochoa*, 2017-NMSC-031, ¶¶ 57-60, 406 P.3d 505; *id.* ¶ 64 ("In the absence of [affirmative] proof, this factor does not tip the scale in [the d]efendant's favor."); *see also Garza*, 2009-NMSC-038, ¶ 35 ("The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration."). Second, as for anxiety and concern, Defendant simply contends that, due to the delay in his case, his unspecified anxiety and concern went on for an unacceptably long period. *See State v. Montoya*, 2015-NMCA-056, ¶ 25, 348 P.3d 1057 ("The operative question is whether the anxiety and concern, *once proved*, has continued for an unacceptably long period." (emphasis added) (internal quotation marks and citation omitted)). But, again, without some affirmative proof, which Defendant does not provide, we are left to speculate about whether such prejudice was undue. *See*

*Ochoa*, 2017-NMSC-031, ¶ 61; *Garza*, 2009-NMSC-038, ¶ 35. Third, as for impairment of the defense, Defendant merely contends that "[w]hile [he] cannot definitively state that the delay diminished [witnesses'] accounts of the events . . . , reason and research suggests that at least some details may have been lost[.]" Defendant does not substantiate this claim, other than to reference a medical journal on memory and to assert that the factual accounts of the eyewitnesses varied "wildly." Such broad and unspecified assertions are insufficient to establish an actual defense impairment. *See Parrish*, 2011-NMCA-033, ¶ 34.

**{28}**    In sum, Defendant has failed to make a particularized showing of prejudice and, accordingly, his right to speedy trial was not violated. *See id.* ¶ 36.

## IV.    Sufficiency of Evidence for Failure to Appear

**{29}**    Defendant next argues that insufficient evidence supports his conviction for failure to appear. For the reasons that follow, we do not agree.

**{30}**    "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Montoya*, 2015-NMSC-010, ¶ 52 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. In making this determination, we consider all evidence, even improperly-admitted evidence. *See State v. O'Kelley*, 1994-NMCA-033, ¶ 16, 118 N.M. 52, 878 P.2d 1001.

**{31}**    In order to convict Defendant of failure to appear, the jury had to find, beyond a reasonable doubt, that (1) "[D]efendant was released pending trial in a criminal action on the condition that he appear as required by the court"; (2) "[D]efendant failed to appear as required by the court"; (3) "[D]efendant's failure to appear was willful, without sufficient justification or excuse"; and (4) "[t]his happened in New Mexico on or about the 5th day of October, 2015." *See* UJI 14-2229 NMRA; § 31-3-9; *see also Arrendondo*, 2012-NMSC-013, ¶ 18 ("[J]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)). Defendant does not dispute that sufficient evidence supports elements one, two, or four; instead, Defendant claims only that there is insufficient evidence to support a finding that he willfully failed to appear.

**{32}**    At trial, the State presented the following evidence relating to Defendant's state of mind. A transcript of trial counsel Fernandez's statements from the October 5, 2015, trial setting, at which Defendant failed to appear, was admitted into evidence. At the original trial setting, Fernandez stated, "[Defendant] is not here. We haven't talked to

[Defendant] since Friday last." Fernandez further stated, "[W]e wanted him to come in Saturday and he did not show. We left another message to come in Sunday, he did not show." In addition, an officer of the Grants Police Department testified that he was dispatched "in reference to a male subject running through [a] resident's back yard[,]" approximately one-and-a-half months after Defendant failed to appear at his trial. The officer testified that, upon being directed to another yard, he found Defendant "hiding under a camper trailer." After his apprehension, Defendant asked the officer to let him go, stating, "They [are] going to take [me] away from [my] family."

**{33}** We conclude this evidence is sufficient and find this Court's analysis of similar facts in *State v. Aranda*, 1980-NMCA-130, 94 N.M. 784, 617 P.2d 173, persuasive. In *Aranda*, the Court observed that a defendant's state of mind "is seldom, if ever, susceptible to direct proof, and may be proved by circumstantial evidence." *Id.* ¶ 5 (internal quotation marks and citation omitted). *Aranda* involved a defendant who left town the day before trial and: (1) did not attempt to inform his attorney that his car had broken down, (2) did not ask his attorney or family to explain his absence, and (3) did not turn himself into the authorities until three weeks after his trial date. *Id.* ¶¶ 6-7. The *Aranda* Court concluded that the jury could reasonably infer from this evidence that the defendant willfully failed to appear for his scheduled trial. *See id.* ¶ 7. Similarly, here, not only did Defendant fail to contact his attorney or otherwise seek to justify his nonappearance, Defendant also actively concealed himself from law enforcement while expressing his understanding of the possible consequences of trial. Reviewed in a light most favorable to the State, we conclude the jury reasonably could infer that Defendant willfully failed to appear for his scheduled trial on October 5, 2015.[5]

## V. Implied Juror Bias

**{34}** Next, we consider Defendant's contention that he was denied his Sixth Amendment right to a fair trial on the ground that the district court refused to excuse one of the jurors after she exhibited implied bias. Defendant argues we should review this issue de novo, whereas the State argues for an abuse of discretion standard. *Compare State v. Sanchez*, 1995-NMSC-053, ¶¶ 14, 16, 120 N.M. 247, 901 P.2d 178 (holding "that juror bias may be implied as a matter of law in New Mexico" but providing that "we do not believe that the trial court abused its discretion in refusing [the defendants'] request to replace the juror with an alternate or in denying their motion for a new trial"), *with State v. Clark*, 1999-NMSC-035, ¶ 10, 128 N.M. 119, 990 P.2d 793 ("It is within the trial court's discretion as to whether a prospective juror should be excused."). We need not decide which standard is applicable because, even assuming it is de novo, Defendant does not prevail.

---

[5]Defendant, citing the Fifth Amendment to the United States Constitution alone, claims that "evidence cannot be inferred." Defendant's contention is incorrect. A permissible logical inference may be drawn from the facts so long as surmise and conjecture are not required to buttress it. *See State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930. Defendant does not direct us to any authority suggesting such improper surmise and conjecture occurred in this case, and we detect none. *See, e.g., State v. Ibarra*, 1993-NMCA-040, ¶ 13, 116 N.M. 486, 864 P.2d 302 ("We are entitled to assume, when arguments are unsupported by cited authority, that supporting authorities do not exist.").

**{35}** Before the jury retired to deliberate, Defendant moved to strike Juror #12 on the ground that she was the sister of a former girlfriend of codefendant Galindo. According to defense counsel Fernandez, there had been "a domestic dispute" at some point between Galindo and his ex-girlfriend, and counsel was concerned about "some bad feelings" that Juror #12 might harbor. Counsel apparently had just learned of this information from Galindo's father. Fernandez and counsel for the State subsequently questioned Galindo's father who testified that, five years prior, Juror #12 was involved in urging her sister to press charges against Galindo; but Galindo's father could not say whether Juror #12 personally knew Defendant. Fernandez argued that Juror #12 should be stricken because she did not disclose in voir dire that she knew Galindo. The district court denied the request. On appeal, Defendant, relying on *Sanchez*, argues that he was denied his Sixth Amendment right to an impartial jury because Juror #12 exhibited implied bias.

**{36}** In *Sanchez*, the defendants contended the district court erred by not excusing a juror or declaring a mistrial after counsel learned that "the juror's sister, a victims' advocate employed by the prosecuting attorney's office, was sitting with the victim's family during the trial." 1995-NMSC-053, ¶ 1. Because the juror disclosed during voir dire that her sister worked for the district attorney's office, our Supreme Court held that the defendants had waived any challenge of actual bias of the juror. *Id.* ¶¶ 11-12. Notwithstanding this waiver, our Supreme Court went on to adopt the rule that "extreme situations" may call for excusal of a juror on grounds of implied bias. *Id.* ¶¶ 13-14. Under the facts of that case, however, the Court held that no implied bias was present. *Id.* ¶ 15.

**{37}** In this case, Defendant, with little analysis as to what extreme facts would constitute a showing of implied bias, simply cites *Sanchez* and asserts, "The trial court's refusal to strike Juror #12 and the resulting prejudice was error requiring a new trial." We do not agree. Instead, we conclude that Juror #12's connection to Defendant was too "indirect and insufficient as a matter of law to support a determination of implied bias[.]" *Id.* We draw this conclusion for three reasons. First, we find the facts in this case—where the juror's sister at one point dated Defendant's one-time codefendant, who was not even present at trial—are less extreme than those in *Sanchez*—where the juror's sister was employed by the prosecutor as a victims' advocate and sat with the victim's family during trial. *See id.* ¶¶ 8, 15. Second, in adopting the implied bias rule, our Supreme Court sided with Justice O'Connor's concurrence in *Smith v. Phillips*, 455 U.S. 209 (1982), in which she gave the following examples of "extreme situations" justifying a finding of implied bias: "[A] revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Id.* at 222; *see Sanchez*, 1995-NMSC-053, ¶ 13. The facts in this case do not fit within any of the scenarios described by Justice O'Connor. Third, Defendant fails to direct us to any other authority that would support his claim that Juror #12 should have been stricken on the ground of implied bias. *See, e.g.*, *State v.*

*Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 ("[A]bsent cited authority to support an argument, we assume no such authority exists."). Accordingly, we reject this claim.[6]

## VI.    Exclusion of Witness's Use of Marijuana

**{38}**    We next address Defendant's contention that the district court erred by preventing him from questioning Baca, the State's key witness, about her use of marijuana. Similar to the last issue, the parties disagree about the standard of review. And similar to the last issue, we need not decide which standard of review to employ because we reject Defendant's argument as unsupported.

**{39}**    Relying on *State v. Blea*, 1984-NMSC-055, ¶¶ 7-9, 101 N.M. 323, 681 P.2d 1100, the State moved the district court in limine to prohibit Defendant from asking Baca about her use of medication, including marijuana. *See id.* (holding that the trial court did not err in prohibiting the defendant from questioning a witness about prior addiction or in excluding expert testimony on that issue). In an order noting that Defendant did not file a response, the district court granted the motion and prohibited Defendant from questioning Baca about her marijuana use absent a qualified expert who could "testify that such medication will probably impair the witness[']s ability to reasonably accurately recollect events relative to the testimony at hand or will in some other significant manner affect the credibility of the witness[.]" Defendant twice moved for reconsideration, arguing, in essence, that the district court routinely allows such inquiry without the need of an expert because such evidence is relevant in determining a witness's competency to testify. The district court denied each motion.

**{40}**    Defendant, referencing Rule 11-608 NMRA (a witness's character for truthfulness or untruthfulness), now argues on appeal only that the district court erred because Baca's marijuana use would have been probative of her truthfulness or untruthfulness.[7] It appears this issue was not preserved for review. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("To preserve an issue for review on appeal, it must

---

6We note that our analysis here is limited to the issue raised in Defendant's brief in chief. Even though Defendant appears to take issue with the fact that the district court did not allow the parties to question Juror #12, and instead only allowed Galindo's father to be questioned, he does not assert in his brief in chief that the district court committed reversible error on this basis. *Cf. Sanchez*, 1995-NMSC-053, ¶ 15 (holding, implicitly, that the defendants would have been entitled to "a hearing in which they could attempt to prove actual bias, if they had not waived the right to such a hearing"). Instead, Defendant argues the issue as one involving implied bias alone. In his reply brief, however, Defendant makes no mention of implied bias and asserts, without citing any authority, that the error is "two-fold": (1) the district court should have excused Juror #12 given her failure to disclose her relationship to Galindo in voir dire, and (2) the district court erred by taking testimony from Galindo's father rather than Juror #12 herself. We do not consider these arguments. *See, e.g.*, *State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050 ("We will not consider issues raised for the first time in an appellant's reply brief.").
7Defendant also asserts that "the trial court was estopped from prohibiting the admission of the evidence in [Defendant's] trial when the introduction of the same evidence was allowed in his codefendant's trial on the identical facts and issues." Acknowledging this claim is unsupported by evidence in the record, Defendant invites us to "order the transcript" from Galindo's trial. We decline to do so. Preparing an adequate record for the review of appellate issues is the appellant's responsibility, not ours. *See State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 ("It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal.").

appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)). But even assuming the issue was preserved, Defendant has not persuaded us that it has merit. Defendant relies on *State v. Yancey*, 2017-NMCA-090, ¶ 22, 406 P.3d 1050, *rev'd*, 2019-NMSC-018, 451 P.3d 561, claiming, "If drug use or lack thereof did not affect the truthfulness of the defendant engaging in [a plea] colloquy, trial courts would not ask that question." But *Yancey* supports only the proposition that courts engage in a plea colloquy with a defendant in order to ensure that the plea is entered intelligently, knowingly, and voluntarily. *Id.* It does not support the contention that evidence of a witness's use of medication or other drug is probative of truthfulness or untruthfulness. Defendant having cited no pertinent authority, we assume none exists and therefore reject his claim of error. *See Casares*, 2014-NMCA-024, ¶ 18.

## VII.    Multiple Conspiracy Convictions

**{41}**    In our original opinion, we raised the possibility that Defendant's multiple conspiracy convictions violate his right to be free from double jeopardy but chose not to resolve this fact-specific issue without the benefit of briefing from the parties. *See State v. Comitz*, 2019-NMSC-011, ¶¶ 33-34, 443 P.3d 1130 (observing that multiple factors are to be considered in determining whether the state has met its "heavy burden" to rebut the legislatively-established presumption of "only one, overarching, conspiratorial agreement," including "whether the alleged conspiracies (1) have the same location, (2) overlap significantly in time, (3) involve the same or overlapping personnel, (4) involve similar overt acts charged against the defendant, and (5) involve the defendant performing a similar role" (internal quotation marks and citation omitted)).

**{42}**    In his motion for rehearing, Defendant argues that (1) his multiple conspiracy convictions violate his right to be free from double jeopardy and (2) his conviction for conspiracy to commit aggravated battery is not supported by sufficient evidence. In the motion, Defendant noted the State's opposition. We ordered the State to respond to Defendant's motion for rehearing, and the State filed a one-paragraph response noting its concurrence with both of Defendant's arguments made on rehearing.

**{43}**    Although we are not bound by the State's concession, *see id.* ¶ 25, based on our review of the record and Defendant's arguments made on rehearing, we agree that the State did not rebut the presumption that Defendant's "actions were all part of one, overarching conspiratorial agreement," and his multiple conspiracy convictions therefore violate his right to be free from double jeopardy. *See id.* ¶ 36. While the district court "merged" two of Defendant's three conspiracy convictions for purposes of sentencing, our Supreme Court has made it "clear that a double jeopardy violation is not cured by merging multiple convictions for concurrent sentencing." *State v. Torres*, 2018-NMSC-013, ¶ 40, 413 P.3d 467. Instead, "[t]he appropriate remedy is to vacate the defendant's redundant convictions with punishment imposed on the single remaining conspiracy at the level of the highest crime conspired to be committed." *Id.* (alterations, internal quotation marks, and citation omitted).

**{44}**    Defendant was convicted of two third degree conspiracies (for armed robbery and aggravated burglary) and one fourth degree conspiracy (for aggravated battery). *See* § 30-16-2 (providing that "[w]hoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony"); § 30-16-4 (providing that "[w]hoever commits aggravated burglary is guilty of a second degree felony"); § 30-3-5(C) (providing that "[w]hoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon . . . is guilty of a third degree felony"); § 30-28-2(B)(2), (3) (providing that "if the highest crime conspired to be committed is a second degree felony, the person committing such conspiracy is guilty of a third degree felony" and "if the highest crime conspired to be committed is a third degree felony or a fourth degree felony, the person committing such conspiracy is guilty of a fourth degree felony").[8] We, accordingly, remand to the district court to vacate Defendant's conviction for fourth degree conspiracy to commit aggravated battery and one of his convictions for third degree conspiracy. *See Torres*, 2018-NMSC-013, ¶ 40. In light of this, we need not address Defendant's contention that his conviction for conspiracy to commit aggravated battery is not supported by sufficient evidence.

**CONCLUSION**

**{45}**    For the foregoing reasons, we conclude that Defendant's multiple conspiracy convictions violate the prohibition against double jeopardy. We therefore remand to the district court to vacate Defendant's conviction for fourth degree conspiracy to commit aggravated battery and one of his convictions for third degree conspiracy and to resentence Defendant accordingly. Otherwise, we affirm.

**{46}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**ZACHARY A. IVES, Judge**

---

8The amended judgment and sentence incorrectly lists conspiracy to commit aggravated burglary as a second degree felony; it is a third degree felony. The amended judgment and sentence also incorrectly lists conspiracy to commit aggravated battery as a third degree felony; it is a fourth degree felony.