This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38234**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**OLIVER DELGADILLO-VASQUEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Following a jury trial, Defendant Oliver Delgadillo-Vasquez was convicted of eight different charges, including one count of sexual criminal sexual penetration of a minor (CSPM) in the first degree (child under 13), contrary to NMSA 1978, Section 30-9-11(D) (2009), as charged in Count 1; one count of kidnapping in the first degree (victim not freed in safe place and/or physical injury or sexual offense committed), contrary to NMSA 1978, Section 30-4-1 (2003), as charged in Count 3; three counts of CSPM in the second degree (child age thirteen to eighteen), contrary to NMSA 1978, Section 30-

9-11(E)(1) (2009), as charged in Counts 4 through 6; one count of bribery of a witness, contrary to NMSA 1978, Section 30-24-3 (1997), as charged in Count 8; one count of aggravated stalking, contrary to NMSA 1978, Section 30-3A-3.1 (1997), as charged in Count 9; and one count of residential burglary, contrary to NMSA 1978, Section 30-16-3(A) (1971), as charged in Count 10.

{2}     Defendant raises three issues on appeal: his convictions for first-degree kidnapping (Count 3) and CSPM (Count 4) subject him to double jeopardy; the district court erred when it denied Defendant's motion for a new trial based on ineffective assistance of counsel; and lastly he challenges the sufficiency of the evidence to support his convictions for CSPM (Count 1), first-degree kidnapping (Count 3), and residential burglary (Count 10). We reject Defendant's sufficiency of the evidence claim and his claim that the district court erred in denying his motion for a new trial. However, we reverse Defendant's conviction for CSPM (Count 4), because we conclude that it violates his right to be free from double jeopardy. We remand to the district court to amend the judgment and sentence accordingly.

**DISCUSSION**

**I.      Double Jeopardy**

{3}     Defendant argues that his convictions for first-degree kidnapping (Count 3) and CSPM (Count 4), violate his right to be free from double jeopardy. He asserts that the State relied on the same conduct, a single sexual offense, to support both convictions. The State concedes that Defendant's convictions violate the prohibition against double jeopardy. While we are not bound by the State's concession, *see State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we agree. Defendant's kidnapping and CSPM convictions are based on the same conduct, which was the single sexual offense that took place at Defendant's home. *See State v. Serrato*, 2021-NMCA-027, ¶ 27, 493 P.3d 383 ("As the facts presented at trial demonstrate that the first-degree kidnapping and CSCM charges were based on the *same* conduct, we are bound to conclude that the conduct underlying both offenses is unitary."). The State relied on the same conduct to support both charges—its theory was identical—indicating that upon conviction of both counts Defendant would be punished twice for the same offense. The Legislature did not intend multiple punishments under such circumstances. *See id.* ¶¶ 28-32. Because the CSPM conviction carries a lesser sentence, it must be vacated. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 (explaining that "where one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence"). Accordingly, we remand to the district court to vacate Defendant's conviction for CSPM (Count 4).

**II.     Ineffective Assistance of Counsel**

{4}     "The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel." *State v. Mosley*, 2014-NMCA-094, ¶ 18, 335 P.3d 244. Defendant argues that the district court erred when it denied his motion for a new trial

based on ineffective assistance of counsel. As an initial matter, Defendant raised a number of the issues that he now raises on appeal to the district court. An evidentiary hearing was held, and the district court ruled on those issues, denying Defendant's motion for a new trial. Defendant also raises new claims of ineffective assistance of counsel for the first time on appeal. Because the standard of review that we apply to Defendant's arguments raised below, and ruled on by the district court, differs from that applicable to those arguments that he raises for the first time on appeal, we address them separately.

## A.     Arguments Ruled on Below

**{5}** At the district court level, Defendant moved for a new trial arguing that his defense counsel erred in failing to explain his right to compulsory process and failing to object to the authenticity of Facebook messages between Defendant and Victim at trial.[1] The district court denied the motion. We review the district court's denial of Defendant's motion for a new trial for abuse of discretion. *See State v. Garcia*, 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). When determining whether the district court abused its discretion, "we defer to the district court's findings of fact if substantial evidence exists to support those findings, but we review the application of the law to the facts de novo." *State v. Miera*, 2018-NMCA-020, ¶ 24, 413 P.3d 491.

### 1.     Compulsory Process and Failure to Call Witnesses

**{6}** First, Defendant contends that defense counsel erred in failing to explain his right to compulsory process. He argues that he was prejudiced by such error, as he would have called Victim's aunt, his tattoo artist, and his mother and brother as witnesses favorable to his defense, had he known about his right.

**{7}** The district court relied on the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984) in ruling that defense counsel erred "to the extent that he failed to advise Defendant of his compulsory process right." However, the district court concluded that Defendant failed to show that he "was prejudiced as a result of this error." We agree. Article II, Section 14 of the New Mexico Constitution guarantees criminal defendants "the right . . . to have compulsory process to compel the attendance of witnesses in his behalf." It is clear that defense counsel erred by failing to inform

---

1Defendant also asserts that defense counsel erred by failing to use reasonable evidence to attack witness's credibility on cross-examination, failing to research the laws regarding impeachment and calling witnesses, and lastly failing to understand how Facebook worked. However, Defendant merely asserts these points without offering any argument to support them. We decline to address these arguments given Defendant's deficient briefing. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181. (We will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be.").

Defendant of his right to compulsory process. However, Defendant fails to meet his burden of establishing prejudice from such failure. Under *Strickland*, the burden is "on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M.719, 204 P.3d 44. As detailed below, Defendant has failed to show that defense counsel's error resulted in prejudice to his defense because there is no reasonable probability that the result of the trial would have been different had the witnesses testified.

{8}     Concerning Victim's aunt, Defendant claims that "her testimony would have punched holes in [Victim's] and [Victim's mother's] testimony, specifically regarding the kidnapping." However, the district court found that Victim's aunt made statements in her pretrial interview that "corroborated many aspects of [Victim's] account that she was held at Defendant's home for multiple days." The district court also found that many of the aunt's statements "would appear to hurt Defendant more than help him." Defendant admits on appeal that part of the aunt's testimony "could be used in the State's favor." For these reasons, it is unlikely that the aunt's testimony would have changed the result at trial. Defense counsel seemingly decided this as well, since after his motion was denied for mistrial due to her lack of appearance, he withdrew his request that her pretrial interview statements be admitted into evidence. By doing so, the district court found that defense counsel changed tactics and "suggested that he would instead tell the jury it could take into consideration that certain witnesses were not there to testify" in weighing whether the State had met its burden. *See State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (stating "if on appeal we can conceive of a reasonable trial tactic which would explain counsel's performance, we will not find ineffective assistance."). Additionally, the district court noted that because the Victim's aunt was in Mexico and could not appear due to her health issues, "it is difficult to determine what Defendant could have done to secure her presence," since a subpoena could not compel her appearance. Therefore, we cannot say that the district court abused its discretion in ruling that the aunt's absence at trial did not prejudice Defendant.

{9}     Second, Defendant claims that his tattoo artist would have testified that he had distinctive tattoos when he was involved with the Victim and that the testimony would have "contradict[ed Victim's] statement in [the forensic interview] that [Defendant] did not have any tattoos." Again, applying *Strickland*, the district court concluded that Defendant was not prejudiced by the absence of his tattoo artist at trial. We agree. Defendant admitted in his motion for a new trial that, apart from Victim's aunt, "none of the other witnesses mentioned [in the motion for a new trial] were essential to the presentation of a defense." Moreover, in the forensic interview, when asked if Defendant had any tattoos near his penis, Victim stated, "No." And Victim never testified about Defendant's tattoos at trial. Therefore, the tattoo artist's testimony at trial would not have impeached Victim regarding Defendant having a chest tattoo. Given that Defendant also conceded that the testimony of his tattoo artist was not essential to his defense, we agree that Defendant has failed to meet his burden of establishing prejudice.

**{10}** Finally, Defendant argues that testimony from his mother and brother "would have shown that [Victim] was not being held hostage." The district court concluded that since Defense counsel chose not to call them for tactical reasons, and although he failed to timely give notice to the State of his intention to call the witnesses, the district court did not exclude them for that reason, and thus the circumstance did not establish failure on the part of Defendant's trial counsel. On appeal, Defendant's assertions to the contrary are purely speculative. We will not question defense counsel tactics, *See Roybal*, 2002-NMSC-027, ¶ 21, nor will we speculate about hypothetical evidence. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (stating that "[i]t is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence"). Thus, we do not consider this claim any further.

## 2.    Facebook Evidence

**{11}** Next, Defendant contends that his attorney was ineffective by not objecting to certain Facebook messages admitted at trial. Specifically, Defendant argues that defense counsel failed to challenge the authenticity of the messages between Defendant and the Victim. Defendant's argument that defense counsel could have objected to the messages relies entirely on *State v. Jesenya O.*, 2021-NMCA-030, 493 P.3d 418, *rev'd*, 2022-NMSC-014, 514 P.3d 445. Had evidence of the Facebook messages not been admitted, according to Defendant, "the jury would not have seen that [Defendant], allegedly, told [Victim] that he wanted to have sex with her." Defendant contends that the Facebook evidence "aided the State's case by corroborating [Victim's] testimony regarding the sexual assaults."

**{12}** The district court concluded that defense counsel's performance was not deficient in regard to his objections to the admissibility of the Facebook messages, because defense counsel in fact "raised several objections to the admission of the Facebook messages, yet they were admitted after the State laid an adequate foundation for their admission." Furthermore, the district court concluded that Defendant did not meet his burden of establishing that the Facebook messages prejudiced him, since Defendant did not show "a reasonable probability that the outcome of the trial would be different if trial counsel had made an argument that the messages were possibly fabricated."

**{13}** We agree with the district court. Here, the record demonstrates that defense counsel objected multiple times to the admission of the Facebook messages. Defendant's argument that defense counsel should have objected to the Facebook messages pursuant to *Jesenya O.* lacks merit given that case has since been reversed by our Supreme Court. *See* 2022-NMSC-014, ¶ 2. Defendant also fails to develop an argument about how defense counsel did not adequately object to the authenticity of the Facebook messages. Regardless of the status of the case cited, we will not address undeveloped arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments). Finally, Defendant fails to articulate an argument as to how to

Facebook messages prejudiced his defense—Victim testified on multiple occasions that she and Defendant had sex at a time when Victim could not legally consent to such acts. For the foregoing reasons, we cannot say that the district court abused its discretion in ruling that Defendant failed to establish both that defense counsel's performance was deficient regarding the Facebook messages or that Defendant was prejudiced by the admission of the messages.

## B.      Arguments Raised for the First Time on Appeal

**{14}**   On appeal Defendant raises several new arguments to support his claim that he received ineffective assistance of counsel.[2] Specifically, Defendant contends that (1) defense counsel's error in failing to advise him of his compulsory process right prejudiced him because he would have called additional favorable witnesses to testify on his behalf at trial; (2) defense counsel used prejudicial language throughout trial; and (3) defense counsel failed to object to Victim's forensic interview being admitted at trial.

**{15}**   "We review claims of ineffective assistance of counsel de novo." *Dylan J.*, 2009-NMCA-027, ¶ 33. "[T]here is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). In order to establish a prima facie case of ineffective assistance of counsel, "a defendant must demonstrate that (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. The "completeness of the record" determines "[w]hether we address a claim of ineffective assistance through direct appeal." *State v. Miera*, 2018-NMCA-020, ¶ 30, 413 P.3d 491 (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *Roybal*, 2002-NMSC-027, ¶ 19.

**{16}**   In New Mexico, there is a clear preference for habeas corpus proceedings over direct appeals "because the district court record might not adequately document the sort of evidence essential to a determination of defense counsel's effectiveness." *State v. Pate*, ___-NMCA-___, ¶ 26, ___ P.3d ___ (A-1-CA-39508, Apr. 19, 2023) (alteration, internal quotation marks, and citation omitted). However, if on appeal, a defendant makes a prima facie case for ineffective assistance of counsel on the basis of facts in the record, an appellate court can remand to the district court for an evidentiary hearing. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068. In *Pate*, we acknowledged that we "have few guideposts for distinguishing between circumstances appropriate for an evidentiary hearing on remand and those best reserved for habeas corpus." ___-NMCA-___, ¶ 28. In spite of the lack of clarity surrounding the appropriateness of remand versus habeas proceedings, we acknowledge "our Supreme Court's expressed

---

[2]Defendant also asserts that defense counsel erred by failing to subpoena Victim's siblings. However, Defendant merely asserts this point without offering any argument to support it. We decline to address this argument given Defendant's deficient briefing. *See Fuentes*, 2010-NMCA-027, ¶ 29.

preference for habeas corpus proceedings to address ineffective assistance of counsel claims . . . and this Court's endorsement of that view." *Id.* "Bearing this tension in mind," we now address Defendant's ineffective assistance of counsel arguments that he raises for the first time on appeal. *Id.*

### 1. Witnesses

**{17}** On appeal for the first time, Defendant identifies additional witnesses favorable to his defense that he would have called had he known about his right to compulsory process: two police officers, who went to Defendant's house shortly after Victim was kidnapped. We have already accepted the district court's conclusion that defense counsel erred by failing to inform Defendant of his compulsory process right; we now determine whether the absence of the witnesses he now identifies resulted in prejudice.

**{18}** First, Defendant argues that the two police officers would have testified that they were called to a domestic disturbance, rather than a kidnapping. Defendant argues that the testimony of both officers would have revealed that the police report did not mention a kidnapping, thus calling into question Victim's testimony at trial and her forensic interview. Even if these witnesses would have testified at trial, the impact that such testimony would have had on the jury is entirely speculative. *See State v. Elliott*, 1977-NMSC-002, ¶ 10, 89 N.M. 756, 557 P.2d 1105 (noting that appellate courts "will not speculate about hypothetical evidence that might have been developed at the defendant's trial"). Defendant must "show a reasonable probability that but for [his] attorney's objectively unreasonable conduct, the result of the proceedings would have been different." *State v. Morgan*, 2016-NMCA-089, ¶ 15, 382 P.3d 981 (internal quotation marks and citation omitted). Defendant has failed to do this—he provides us with no evidence indicating that his arguments about these new witnesses are accurate, and would have impacted the trial. On this record, we cannot determine whether there is a reasonable probability that the absence of these witnesses would have affected the outcome of the case—"and discerning no prejudice, we do not consider the claim further." *Pate*, ___-NMCA-___, ¶ 28.

### 2. Prejudicial Language

**{19}** Next, Defendant asserts that defense counsel's use of the terms "held hostage" and "rape" throughout trial "definitely impacted the jury, especially because six of the ten counts regarded either kidnapping or sexual assault." While we agree with Defendant that defense counsel's use of the words "rape" and "hostage" were of questionable value to the defense presented, Defendant has failed to demonstrate that defense counsel's use of such words constitutes ineffective assistance. *See State v. Martinez*, 2007-NMCA-160, ¶ 26, 143 N.M. 96, 173 P.3d 18 (noting that a "questionable" approach to representation "does not necessarily amount to ineffective assistance"); *see also Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 ("Judicial scrutiny of counsel's performance must be highly deferential." (internal quotation marks and citation omitted)). Furthermore, Defendant's argument that defense counsel's use of the words "held hostage" and "rape" had an impact on the jury is merely speculative,

especially because those terms were used by other people in the presence of the jury. *See State v. Ortega*, 2014-NMSC-017, ¶¶ 57, 59, 327 P.3d 1076 (rejecting ineffective assistance of counsel claims with "purely speculative" arguments unsupported by the record). Therefore, Defendant has not established that his counsel's performance was deficient, and we need not analyze prejudice. *See Garcia*, 2011-NMSC-003, ¶ 34.

### 3.    Forensic Interview

**{20}**    Lastly, Defendant argues that defense counsel erred in failing to exclude the Victim's forensic interview. In his reply brief, Defendant concedes that defense counsel "could have agreed to stipulate to the use of the [forensic] interview but with [the] agreement that prejudicial statements be redacted." Therefore, we focus our analysis solely on whether defense counsel erred in failing to exclude the two statements that Defendant identifies.

**{21}**    In the forensic interview, the Victim made statements about Defendant's immigration status and Defendant raping and killing his last girlfriend. Although defense counsel testified in the evidentiary hearing that he agreed to the admission of the forensic interview because it contained contradictory information that could be used to impeach the Victim, we agree that defense counsel erred in failing to object to the two prejudicial statements made by Victim in the forensic interview. First, regarding the statement about Defendant's immigration status, defense counsel erred in failing to object to its admission because, in spite of the State's argument that Defendant's immigration status "explains why Defendant fled from the scene," any probative value of the statement is substantially outweighed by the danger of unfair prejudice. *See* Rule 11-403 NMRA; *see also State v. Bailey*, 2017-NMSC-001, ¶ 16, 386 P.3d 1007 (stating unfair prejudice in the context of Rule 11-403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (internal quotation marks and citation omitted)). Second, in regard to the statement that Defendant "raped and killed his last girlfriend," Rule 11-404(B)(1) NMRA states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Here, the State does not argue that the statement was introduced for some non-character purpose—rather, it agrees that the statement was "troublesome" and "[defense counsel] should have asked for that comment to be redacted." As Defendant points out, defense counsel could have stipulated the admission of the forensic interview with the agreement that the two prejudicial statements be redacted. We see no evidence in the record to indicate that defense counsel's failure to object to the two prejudicial statements was based on any reasonable trial strategy or tactic. *See State v. Rivas*, 2017-NMSC-022, ¶ 23, 398 P.3d 299. For these reasons, we agree that defense counsel erred in failing to object to both statements.

**{22}**    However, Defendant does not develop an argument to demonstrate how these statements prejudiced him at trial, he simply asserts that both statements were "prejudicial" and that "the end of this trial would have been different" had the evidence not been admitted. Defendant's argument is based off of mere conjecture—as such he

has failed to establish that the statements prejudiced him. *See Pate*, ___-NMCA-___, ¶ 29.

**{23}** Defendant has failed to establish a prima facie case for ineffective assistance of counsel regarding the three arguments he raises for the first time on appeal. "To develop a sufficient record of prejudice, Defendant would need an evidentiary hearing." *Id.* ¶ 33 (stating when the record is insufficient to establish prejudice "habeas corpus is the appropriate avenue to develop such a record"). Although we reject Defendant's claims, we do so "without prejudice to [D]efendant pursuing habeas corpus proceedings based on these arguments." *Id.* (internal quotation marks and citation omitted).

### III.    Sufficiency of the Evidence

**{24}** Defendant argues that there is insufficient evidence to support his convictions for CSPM (Count 1), first-degree kidnapping (Count 3), and residential burglary (Count 10). We disagree.

**{25}** When reviewing a sufficiency of the evidence claim, we review evidence in the light most favorable to the verdict to determine whether a "rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (emphasis, internal quotation marks, and citation omitted). For purposes of reviewing sufficiency of the evidence, "jury instructions become the law of the case." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alteration, internal quotation marks, and citation omitted).

### A.    CSPM

**{26}** Defendant limits his argument regarding his conviction for CSPM (Count 1) to whether the State proved beyond a reasonable doubt that he had sexual intercourse with Victim prior to her thirteenth birthday. The jury was instructed that a conviction required it to find that "[Victim] was a child under the age of thirteen" and that the offence occurred "on or between the 24th day of July, 2016 and the 23rd day of July, 2017."

**{27}** Defendant challenges both of these elements. Defendant argues there is insufficient evidence to establish that he and Victim had sexual relations prior to her turning thirteen years old, which was on July 28, 2017. Defendant's argument hinges on what he claims is contradictory testimony from Victim at trial. According to Defendant, at one point, Victim testified that the first time she had sex with Defendant was when she was twelve years old, and a couple nights after their first sexual encounter, her grandmother died. But Victim also testified that her grandmother found her at Defendant's home on August 14, 2017, which was after she turned thirteen. Defendant also points to Victim's testimony that she first started talking with Defendant "a week or two" before the alleged kidnapping, which took place on August 14, 2017. Defendant asserts that the State's timeline, along with Victim's testimony, "does not make logical sense."

**{28}** Defendant's argument misunderstands our objective in reviewing whether there was sufficient evidence to support his conviction. Contradictory evidence "does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. Defendant's argument, however, consists only of pointing to what he asserts is contradictory evidence. When reviewing a sufficiency of the evidence claim, "we must view the evidence in the light most favorable to the guilty verdict indulging all reasonable inferences and *resolving all conflicts in the evidence in favor of the verdict*." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (emphasis added). Here, both Victim and her mother testified that she was twelve years old at the time the first sexual offense occurred. Based on the testimony of both Victim and her mother, the jury could reasonably infer (1) that Victim was under the age of thirteen at the time the sexual offense occurred, and (2) that the sexual offense occurred in the date range provided in the jury instructions. *See State v. Simmons*, 2018-NMCA-015, ¶ 13, 409 P.3d 1030 (deferring to the fact-finder to resolve any conflict in the testimony of witnesses, and determine weight and credibility); *see also State v. Roybal*, 1992-NMCA-114, ¶ 9, 115 N.M. 27, 846 P.2d 333 (holding that the "testimony of a single witness is sufficient for a conviction"). Based on the foregoing, sufficient evidence was presented to convict Defendant of CSPM (Count 1).

## B. First-Degree Kidnapping

**{29}** Next, in relation to his conviction for first-degree kidnapping (Count 3), Defendant limits his argument to whether the State presented sufficient evidence to prove beyond a reasonable doubt that "[Defendant] took, or restrained, or confined or transported [Victim] by force, or intimidation, or deception by holding her in his home."

**{30}** Defendant's argument, again, hinges on what he asserts is contradictory evidence. At one point during trial Victim testified that when she got to Defendant's home she "just walked in with him." Victim later testified she could not remember how she came to be at Defendant's home and does not remember anything that happened at his home. Additionally, Defendant asserts that Facebook messages between himself and Victim after the kidnapping reveal that the two loved each other and were going to get married.

**{31}** We "resolv[e] all conflicts in the evidence in favor of the verdict." *See Cunningham*, 2000-NMSC-009, ¶ 26. On cross-examination, the Victim was asked if she was taken hostage around August 14, and replied, "Yes sir, that was the time." Moreover, Victim confirmed that she was held in a closet in Defendant's home. Additionally, in the forensic interview, Victim stated that Defendant pulled her into his truck, brought her to his home, and put her in his room and locked the door. Victim further stated that while in Defendant's home, Defendant pulled her by her hair, slapped her, held her against a wall, and beat her. Viewing this evidence in the light most favorable to the verdict, the jury could reasonably find that Defendant "took, or restrained, or confined, or transported [Victim] by force, or intimidation, or deception by holding her in his home." Based on the foregoing, sufficient evidence was presented to convict Defendant of first-degree kidnapping.

## C. Residential Burglary

**{32}**　Lastly, in relation to his conviction for residential burglary (Count 10), Defendant limits his argument to whether he "entered [Victim's house] without authorization." Defendant asserts that Victim's testimony regarding the two occasions that they had sex in her home is insufficient to prove unauthorized entry. In regard to the first instance, Victim testified that she could not remember if she invited Defendant in or how Defendant came to be in her house. In the second instance, Victim testified that she and Defendant were talking outside of her house and she told him to come inside.

**{33}**　Viewed in the light most favorable to the judgment, the evidence presented through Victim's forensic interview established that on one occasion Defendant entered Victim's home while she was cleaning, she ran to her room and locked the door, and Defendant proceeded to pick the lock and forcibly remove her clothes. Defendant's argument invites us to weigh the forensic interview against Victim's testimony that he cites; it is not our role to do so. *See State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314 (noting a reviewing court "does not weigh the evidence and may not substitute its judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict"). Based on the evidence that was presented to the jury from the forensic interview, a reasonable juror could have concluded that Defendant entered Victim's home without authorization.

## CONCLUSION

**{34}**　For the reasons set forth above, we reverse Defendant's conviction for CSPM, as charged in Count 4 and remand to the district court to amend the judgment and sentence accordingly. Otherwise, we affirm Defendant's convictions and conclude that the record is insufficient to establish a prima facie case of ineffective assistance of counsel. Nothing in our determination prevents Defendant from pursuing a habeas corpus proceeding.

**{35}**　**IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**